Richard SOMBERS and Joan Sombers

v.

STROUD TOWNSHIP ZONING HEARING BOARD and Township of Stroud, and Dan D. Crawford

Appeal of: Township of Stroud and Dan D. Crawford

Richard Sombers and Joan Sombers

v.

Stroud Township Zoning Hearing Board and Township of Stroud, and Dan D. Crawford

Appeal of: Richard Sombers and Joan Sombers.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2006.
Decided Nov. 30, 2006.
Reargument Denied Jan. 18, 2007.

Joseph P. McDonald, Jr., Stroudsburg, for designated appellants, Richard Sombers and Joan Sombers.

David J. Williamson, East Stroudsburg, for appellee, Stroud Township Zoning Hearing Board.

Richard E. Deetz, Stroudsburg, for appellee, Township of Stroud.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY President Judge COLINS.

In these consolidated cross-appeals from an order of the Court of Common Pleas of Monroe County, landowners Richard and Joan Sombers (Sombers or landowners) seek review of the trial court's order reversing a decision of the Zoning Hearing Board (ZHB) of Stroud Township that had denied landowners' request for a variance that would allow them to build a residence on their property. The trial court concluded that variance relief was appropriate, but allowed the ZHB to place conditions on the terms of the variance. The Sombers object to that aspect of the trial court's order. Stroud Township and intervenor Dan D. Crawford (Township) contend that the trial court erred in reversing the ZHB's denial of the variance.[1]

The facts in this case, as developed by the ZHB, and as supported by the record are as follows.[2] The Sombers own a tract of land 2.125 acres in size. Within the tract is a pond approximately .87 acres in size. Section 6.660 of the township's zoning ordinance relates to encroachments into aquatic buffers and requires a minimum buffer of 100 feet from a pond locat-ed within the watershed of a high quality stream. Because of the dimensional characteristics of the property and pond, building a residence would be impossible under the buffer provision without the grant of a variance. The Sombers submitted an initial application to the ZHB seeking approval to build a 770–square–foot residence on the property that would be located sixty-five feet from the pond. The landowners submitted an amended application at a second ZHB hearing to allow the construction of a residence 1,392–square–feet in size, including an attached garage located approximately twenty feet from the pond, with an attached deck fourteen feet from the pond. There is no dispute that the property is located in a residentially zoned area and that a single-family home is a permitted use under the ordinance.

The Board also acknowledged, and also apparently accepted as fact, testimony that the building proposals do not satisfy the property or septic system setback requirements. The Board found that the parcel had previously been part of a larger tract. Finally, the Board determined that the landowners knew or should have known that the characteristics of the property would preclude development. In rendering its decision, the Board concluded that the landowners had not established the five factors necessary for the grant of a variance, and held that any hardship they experienced by virtue of the ordinance was self-inflicted, because they bought the property knowing, or they should have

---

1. This Court's standard of review when a trial court takes no additional evidence and properly confines its own review, is limited to determining whether the ZHB abused its discretion or erred as a matter of law. *Diocese of Altoona–Johnstown v. Zoning Hearing Board of the Borough of State College,* 899 A.2d 399 (Pa.Cmwlth.2006).

2. The ZHB failed, for example, to provide a complete description of the property, including total acreage, and other facts that although not pivotal to review are helpful to our consideration of the issues. Accordingly, where the parties have not disputed such facts, we recite as if the Board had made such facts.

known, that a residence could not be erected in conformity with the zoning ordinance's set-back requirements.

The Township raises the following issues: (1) whether the landowners have established that they did not create the hardship or that they did not know when they purchased the property that they could not develop it without the grant of a variance; (2) whether the property has reasonable uses in its present state and has not been deprived of economic value and therefore, no hardship exists; (3) whether the landowners have failed to satisfy the requirements for a variance by requesting approval of modifications that exceed those necessary to develop the land; and (4) whether the grant of an aquatic buffer variance entitles the landowners to unconditional site specific relief.

As noted by the trial court, Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10910.2, provides that a zoning hearing board may grant a variance when an applicant establishes the existence of the following elements: (1) unique physical characteristics of the property, rather than the operation of the zoning ordinance create an unnecessary hardship; (2) because of the unique physical characteristics of the property, the property cannot be **developed** in conformity with the provisions of the zoning ordinance and the "authorization of a variance is therefore necessary to enable the reasonable use of the property;" (3) the applicant hasn't created the hardship; (4) that the variance, if authorized, will not alter the character of the neighborhood or adversely affect possible future development of adjacent property; and (5) that the variance, if approved, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation at issue.

Our analysis will involve consideration of whether landowners would be denied the "reasonable" use of their property if they do not receive the variance they requested. Although the Township and Intervenor suggest that the pond and surrounding land can be reasonably used for recreation, we believe that the reasonable use of the land anticipates more formal uses, such as would enable a landowner to use the land for living or work. We begin by noting Article III, Section 3.223 of the Township's zoning ordinance, relating to the purpose of the R–1 district in which the landowners' tract is located, which states:

R–1 Low Density Residential District—**The purpose of the Low Density Residential District is to permit single family residential development** which will offer a living environment with opportunities for privacy and a development pattern which will preserve the open space character and the physical and environmental amenities of these sections of the Township. The lot size should permit the development of safe on-lot sewerage and water utilities. However, if it is feasible, centralized water or sewer service may be extended into portions of this District.

(Emphasis added.)

This provision makes clear that the drafters of the ordinance intended for residential development in the R–1 district, and accordingly, single-family residences are permitted uses in such districts. Although the ordinance clearly provides for the construction of ponds as a permitted use, *See* Schedule 1—Revised 4/98, Regulations Governing the Use of Land in Article IV of the zoning ordinance, we believe that the stated purpose of the zoning ordinance—to permit the development of single-family dwellings—indicates a legislative intent to permit the construction of a dwelling in this case, despite the fact that

the land is presently being used for a pond, as permitted in the ordinance. A threshold question is whether the fact that a parcel of land that consists of a use that is permitted in the particular zoning district in which it is located makes the use automatically a "reasonable use." If the permitted use is not reasonable, then variance relief is appropriate. In these circumstances, we conclude that confining the use of the property to a pond would not permit the reasonable use of the property. As noted in this case, the purpose of the R–1 district is to enable the **development** of single-family homes.

The Township first argues that landowners are not entitled to a variance because they knew or should have known at the time of their purchase that they would not be able to develop the lot without the grant of a variance. The Township cites this Court's decision in *King v. Zoning Hearing Board of Towamencin Township*, 154 Pa.Cmwlth. 109, 622 A.2d 435 (1993), in which the Court affirmed the denial of a variance to a landowner who knew the lot he bought was of insufficient size to build a single-family home in conformity with the zoning ordinance. However, *King* includes a factual distinction not discussed by the Township: The purchaser there was aware, or should have known, that the original developer had intended to merge the sub-sized lot with an adjoining conforming lot. That case is similar to this case in that the purchaser bought the property for a price that was well below the value of a developable lot in the area, $2,500 as compared to $40,000 to $50,000. Although the Zoning Hearing Board made a finding that "[t]he parcel was previously

joined with a neighboring larger parcel in the chain of title," (Finding of Fact H), that finding is insufficient for this Court to conclude that the holding in *King* applies. The Township points to a subdivision plan approved in 1986 (included in the supplemental record at p. 12); however, although that subdivision plan indicates that the original tract encompassed a larger tract, the plan also shows that the subdivision separated the subject parcel from land that was already divided by Beacon Hill Road. The road appears to have previously made the lot inadequate for the purpose of development, and there are no other facts we can discern from the record that would support applying the holding in *King*.[3]

In *King*, the Court also referred to its earlier decision in *Appeal of Grace Building Co., Inc.*, 39 Pa.Cmwlth. 552, 395 A.2d 1049 (1979), in which we "held that the new owner should not be denied a variance **solely** because he got the property at a discount and knew of its non-conformity." *King*, 622 A.2d at 438. In *King*, the Court noted that "the trial court denied the variance not solely because the landowner knew of the property's non-conformity, but because the landowner knew or should have known that Parcel A was not meant to be held in single and separate ownership, but to be part of the conforming lots." *Id.* at 438. While the Court recognized, based upon the facts of the case, that the "court will not grant a variance solely because of economic hardship," *id.* at 439, the basis of the Court's decision was that a subsequent buyer of a sub-sized lot, that the subdivider intended to merge with another conforming lot, bears the risk

**3.** We also conclude that the Court's rejection of an estoppel argument in *King* to be of no significance. (In *King*, the property owner asserted that the township bore responsibility for the creation of an unusable lot by approving the initial subdivision, noting that "[t]he township cannot be held responsible because it did not condition approval of the subdivision plan on the conveyance of this lot because the evidence shows that the lot was only meant as a 'scrap' parcel of land." *Id.* at 437.)

that he will not be able to obtain variance relief. As noted above, the facts in this case do not indicate that the party that subdivided the original lot had any intention of merging the present lot to create a lot that would conform to the ordinance requirements for construction of a single-family dwelling. More significantly, the Township did not submit evidence that would support denial of a variance for a tract of land that had been physically separated by a street from the original larger tract of land. For these reasons we find *King* distinguishable from this case.

The Township also argues that the variance the Sombers request is actually a use variance, rather than a dimensional variance. *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998), set forth new standards for determining when the grant of a dimensional, as compared to a use, variance is appropriate. The Court indicated that the first inquiry must be to determine what type of variance a party is seeking. Both ponds and single-family homes are permitted uses in the R–1 district; here the only impediment to development is the fact that there is insufficient land to satisfy the set back and buffer requirements. The Township asserts that, when a use variance is at issue, evidence of adverse economic impact alone is insufficient to support a finding that a hardship exists. *SPC Company, Inc. v. Zoning Board of Adjustment of the City of Philadelphia*, 773 A.2d 209 (Pa.Cmwlth.2001) (*SPC*), *petition for allowance of appeal denied*, 568 Pa. 689, 796 A.2d 320 (2002). *SPC* involved a zoning regulation that required a 600–foot buffer setback that prevented the landowner from erecting advertising signs near a bridge.

■ Here the Township argues that the buffer requirement in this case is similar to the buffer requirement in *SPC*, and

therefore the Sombers are really seeking a use variance, i.e., the buffer requirement is more akin to a use restriction than a dimensional restriction. Typically buffer restrictions reflect the legislative concern of a governing body to ensure that certain uses are separated from others, such as where a school is located in a residential area. The buffer restrictions help ensure that certain permitted uses are protected in some measure from an atypical permitted use (approved as either as an unconditional permitted use or special exception). Thus, in this case, the Township supports the notion that the buffer restriction at issue is related to concern for protection of one type of use from another, i.e., protecting a pond for use as a pond from the use of the connecting property as a residence. However, in this case, we conclude that the buffer requirement is less essential to the apparent overall goal of the zoning plan for the R–1 district. Because the district's primary purpose is for the development of single-family residences, it seems reasonable to conclude that the buffer restriction is less important to achieving that goal and therefore one that is not central to the zoning concerns of the governing body. *Compare Segal v. Zoning Hearing Board of Buckingham Township*, 771 A.2d 90 (Pa.Cmwlth.2001) (Request for variance to fill wetlands would constitute use rather than dimensional variance.) Accordingly, this Court concludes that we shall view the request as seeking a dimensional rather than use variance.

■ Although the focus of the Court in *Hertzberg* was concern for abatement of blighted areas, the standard the Court developed is applicable to all dimensional variance requests: "To justify the grant of a dimensional variance, courts may consider multiple factors, including the economic detriment to the applicant if the variance is denied, the financial hardship created by

any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." 554 Pa. at 264, 721 A.2d at 50. While the terms of Section 910.2 remain in effect, some legal scholars have noted that, to harmonize the breadth of *Hertzberg* with those factors identified in Section 910.2, courts may refer to the prefatory paragraph of that section which provides zoning hearing boards with the power to grant variances provided that the board makes findings regarding all of the factors "where relevant in a given case." *See* Ryan, Pennsylvania Zoning Law and Practice, Ryan, Section 6.31. The implication then is that, if a particular factor is not relevant in a particular case, the Board need not make factual findings.

■ With regard to the first criteria, there can be no dispute that the zoning ordinance did not operate to create any hardship regarding landowners' property. The unique physical characteristics of the tract, most notably a pond located nearly dead center of the tract, preclude development of the land. *Whitpain Township Board of Supervisors v. Whitpain Township Zoning Hearing Board*, 121 Pa. Cmwlth. 418, 550 A.2d 1355, *petition for allowance of appeal denied*, 525 Pa. 639, 578 A.2d 932 (1990). Further, as the trial court noted, mere knowledge alone of an impediment to building under the terms of a zoning ordinance is insufficient to deny a variance, *Marlowe v. Zoning Hearing Board of Haverford Township*, 52 Pa. Cmwlth. 224, 415 A.2d 946 (1980). Also, as the Court noted in *Harper v. Ridley Township Zoning Hearing Board*, 21 Pa. Cmwlth. 93, 343 A.2d 381, 384 (1975), "a landowner's hardship is self-inflicted only where he has paid a high price for the property because he assumed that a variance which he anticipated would justify that [high] price." (Citing *Appeal of Gro*, 440 Pa. 552, 269 A.2d 876 (1970)). In this case, the Sombers did not pay a high price

for the land in the hope that they would be able to use the property in a more profitable manner than the single-family home they desire to build. For the reasons stated above, we conclude that the trial court did not err in reversing the ZHB's denial of a variance.

■ The Township finally argues that the trial court erred in permitting the Sombers to develop in accordance with the second plan submitted. The Township is correct in its assertion that the Sombers's first plan as compared with the second plan complies with the rule that, in granting variances, zoning hearing boards, and in this case, the trial court, should direct that the development of a single-family residence will require the minimal deviation from the terms of the ordinance, Section 910.2(a)(5) of the MPC, 53 P.S. § 10910.2(a)(5). As the Township notes, the first plan the Sombers submitted provided for a 770–square–foot residence that presented the lesser degree of encroachment upon the normal buffer required on the tract. Accordingly, because the trial court granted relief greater than that necessary, i.e., the larger building proposal, this Court will reverse the trial court's grant of relief and direct the trial court to remand the matter to the Zoning Hearing Board with the order to approve the variance but only for the 770–square–foot residence in the original plan the Sombers submitted.

■ In their cross-appeal, the Sombers argue that the trial court erred in providing that the Zoning Hearing Board could attach conditions to the development of the tract. We reject the Sombers's reliance on the argument that they are entitled to site-specific and unconditional relief because the ordinance **as applied** precluded them from building. The case upon which the Sombers rely, *Allegheny Energy Supply Co. v. Township of Blaine*, 829 A.2d 1254 (2003), stands for the proposition that

such relief is available when an ordinance totally excludes a legitimate use throughout a municipality. This ordinance does not apply in such a manner, and accordingly, we deny their request for unconditional approval. The Municipalities Planning Code grants zoning hearing boards the specific right to place conditions on the development of property when issuing variances, Section 910.2(b), 53 P.S. § 10910.2(b), and we will not disturb that aspect of the trial court's order.

Based upon the foregoing we affirm the trial court's conclusion that the landowners are entitled to variance relief. However, we reverse the grant of approval for the second submission and direct the trial court to remand the matter to the ZHB to grant the variance for the construction of a single-family residence as proposed in the landowners' initial application for a 770–square–foot residence. The ZHB may attach reasonable conditions to the variance.

### ORDER

AND NOW, this 30th day of November 2006, the order of the Court of Common Pleas of Monroe County is affirmed insofar as it directs the Zoning Hearing Board of Stroud Township to grant a variance to the landowners. The trial court's order is reversed insofar as it granted the Sombers' request to construct in accordance with their second plan submission. The trial court is directed to remand the matter to the Zoning Hearing with an order for the Board to grant a variance to the Sombers to allow them to build the original 770–square–foot residence described in the original submission.

The trial court's direction that the Zoning Hearing Board may attach reasonable conditions to the variance is affirmed.