Michael SINGER and William R. Piper, Jr., Appellants

v.

PHILADELPHIA ZONING BOARD OF ADJUSTMENT, City of Philadelphia and 1213–1219 Walnut Associates Realty, L.P.

Commonwealth Court of Pennsylvania.

Argued May 9, 2011.

Decided Sept. 30, 2011.

Robert W. Gundlach, Jr., Philadelphia, for appellants.

Anthony P. Forte and Joseph C. Monahan, Philadelphia, for appellee, 1213–1219 Walnut Associates Realty, L.P.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

Michael Singer and William R. Piper, Jr., (Objectors) appeal from the August 5, 2010, order of the Court of Common Pleas of Philadelphia County (trial court), affirming the September 29, 2009, decision of the Philadelphia Zoning Board of Adjustment (Board), which granted Walnut Associates Realty, L.P. (Applicant) variances and certificates to construct a mixed-use building on real property located at 1213–1219 Walnut Street in Philadelphia, Pennsylvania (property).

The property is located in the C–5 Commercial zoning district and is subject to the Special Controls for the Center City Commercial Area. The property was assembled from four lots acquired individually and consists of a parking lot and vacant building. Located mid-block between Sansom Street and Walnut Street, the property is bordered by two large buildings, including a parking garage, and wraps around Fergie's Pub on Sansom Street.

On April 30, 2009, Applicant filed an application with the Department of Licenses & Inspections (Department) to create a single lot from the four lots, to demolish the existing building, and to construct a new thirty-story, mixed-use building. Applicant proposed to use the newly-constructed building to provide 152 hotel rooms, 299 apartments, two eat-in restaurants, a take-out restaurant, retail space, and other amenities, including a fitness center. Applicant also proposed a vehicular and pedestrian passageway through the middle of the building in order to provide access for guests and residents without exacerbating congestion on Walnut or Sansom Streets. In addition, Applicant proposed two forty-foot loading docks for commercial vehicles and trash pick-up off of Sansom Street.

On May 29, 2009, the Department issued a notice of refusal and referral denying the application for the following reasons: (1) section 14–1402(2)(a)(.1) of the city's ordinance (Ordinance) requires one parking space for every two units and Applicant did not propose any off-street parking for the 152 hotel rooms and 299 dwelling units proposed; (2) section 14–305(4)(c)(.2)(.c) limits the open area above ground floor to 50% while Applicant proposed an open area of 55%; (3) section 14–305(4)(g)(.1)(.b) requires a setback of twenty-five feet from the property lines to walls with legally required windows whereas Applicant proposed a setback of zero feet; (4) section 14–305(5)(b)(.2)(.a) limits the maximum building width in the zoning district to sixty feet and Applicant proposed a building width of 102 feet; (5) section 14–305(8)(a)(.2) provides a maximum floor-to-area ratio of 1,200% (267,033 square feet) and Applicant proposed 1,605% (357,165 square feet); (6) section 14–609 provides that the maximum structure height in the zoning district is 296 feet while Applicant

proposed a height of 323 feet; and (7) although section 14–1607(3)(j) provides that take-out restaurants are not permitted in the Center City Commercial Area, Applicant proposed a take-out restaurant. The Department referred the application to the Board to determine if Applicant was entitled to certificates to operate two eat-in restaurants under section 14–1607(7)(b) of the Ordinance.

Applicant appealed to the Board, which held hearings on July 1, 2009, and September 22, 2009. At the July 1, 2009, hearing, Applicant presented an amended proposal that removed the upper floors from one corner of the proposed building and, consequently, eliminated the need for variances to exceed the open area above ground floor and the maximum building height. Applicant also presented testimony that the design and density of the proposed development are required as a result of the physical constraints of the property, which wraps around Fergie's Pub and is located mid-block between Sansom and Walnut streets. David Singer, son of Objector Michael Singer, testified that he is the owner of Fergie's Pub and that, in addition to concerns about light and air, he believes that the proposed development will exacerbate an existing shortage of parking in the area. Objector Rick Piper testified that he is the owner of the 12th Street Gym, that the proposed development would be good for the area, but that he too has concerns about the impact of the proposed development on the existing shortage of parking in the area. At the close of the hearing, the Board left the record open to hear from Washington Square West Civic Association and from David Singer, allowing Singer an opportunity to speak with Applicant about its proposal.

After the July 1, 2009, hearing, Objector Michael Singer submitted a report prepared by Gray Smith (Smith Report) to the Department and the Board. The Smith Report alleged that Applicant's proposal does not include a sixty-foot loading dock and that three loading docks rather than two are required by the Ordinance. Subsequently, the Department notified the Board that its initial refusal and referral was in error because it did not address Applicant's failure to include a sixty-foot loading dock pursuant to section 14–305(14) of the Ordinance. Based on this new ground for refusal, the Board continued its July 1, 2009, hearing and held a second hearing on September 22, 2009, to determine if a sixty-foot loading bay was required by the Ordinance.

On September 29, 2009, the Board issued a notice of decision, which granted each of the dimensional variances requested by Applicant. The Board found that the property is unique because it is located mid-block between Sansom and Walnut Streets and has an irregular shape that wraps around Fergie's Pub. (Board's Finding of Fact No. 126.). The Board found that requiring Applicant to acquire a commitment to secure sixty-five off-site parking spaces rather than on-site parking was the minimal variance required under the Ordinance. (Board's Finding of Fact No. 131.) Next, the Board found that requiring Applicant to include a sixty-foot loading bay would result in unnecessary hardship because of the property's irregular shape and because it is impossible for a truck longer than forty feet to use any loading bay on Sansom Street. (Board's Findings of Fact, Nos. 132–33.) The Board also found that a literal enforcement of the maximum width and floor-area-ratio provisions of the Ordinance would result in unnecessary hardship as a result of the irregular shape of the property, the location of the property mid-block, and the need for a drive-through passageway to accommodate arrivals and departures.

(Board's Finding of Fact No. 134.) Additionally, the Board found that the proposed structure will not have any legally required windows on a property line with a setback of less than twenty-five feet. (Board's Finding of Fact No. 137.) Finally, the Board found that, based on the record as a whole, Applicant satisfied its burden to demonstrate compliance with the variance criteria set forth in section 14–1802 of the Ordinance. (Board's Findings of Fact, Nos. 129, 136, 139–148.) Based on these findings, the Board concluded that the requested variances should be granted, subject to the provisos adopted by the Board. (Board's Conclusion of Law No. 25.)

▇▇▇ Objectors appealed the Board's determination to the trial court, which denied Objectors' land use appeal by order dated August 25, 2010. The trial court reasoned that the Board did not err in determining that: (1) the property is unique as a result of its irregular shape,

which wraps around Fergie's Pub; (2) the proposed deviation from the maximum floor area ratio is a mere technical deviation from the space requirements of the Ordinance; and (3) Applicant was not required to provide on-site parking because numerous parking spaces are available in the area and Applicant is required to obtain a commitment for off-site parking. The trial court concluded that the Board did not err in granting the variances and certificates requested by Applicant. Objectors now appeal to this Court.[1]

▇▇▇ An applicant seeking a variance must prove that unnecessary hardship will result if the variance is denied and that the proposed use is not contrary to the public interest. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). When an applicant seeks a variance for a property located in Philadelphia, the Board must also consider the factors set forth in the Ordinance.[2]

1. When the trial court does not take additional evidence, our Court's scope of review is limited to determining whether the Board committed an abuse of discretion or an error of law in denying the variance. *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998). The zoning board abuses its discretion when it makes material findings of fact not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might find adequate to support a conclusion. *Id.*

2. Section 14–1802(1) of the Ordinance provides the following criteria for consideration:
 (a) that because of the particular physical surroundings, shape, or topographical conditions of the specific structure or land involved, a literal enforcement of the provisions of this Title would result in unnecessary hardship;
 (b) that the conditions which the appeal for a variance is based are unique to the property for which the variance is sought;
 (c) that the variance will not substantially or permanently injure the appropriate use of adjacent conforming property;

 (d) that the special conditions or circumstances forming the basis for the variance did not result from the actions of the applicant;
 (e) that the grant of the variance will not substantially increase congestion in the public streets;
 (f) that the grant of the variance will not increase the danger of fire, or otherwise endanger the public safety;
 (g) that the grant of the variance will not overcrowd the land or create an undue concentration of population;
 (h) that the grant of the variance will not impair an adequate supply of light and air to adjacent property;
 (i) that the grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park or other public facilities;
 (j) that the grant of the variance will not adversely affect the public health, safety or general welfare;
 (k) that the grant of the variance will be in harmony with the spirit and purpose of this Title; and

*Wilson v. Plumstead Township Zoning Hearing Board,* 594 Pa. 416, 936 A.2d 1061 (2007). In essence, an applicant seeking a variance pursuant to the Ordinance must demonstrate that: (1) the denial of the variance will result in unnecessary hardship unique to the property; (2) the variance will not adversely impact the public interest; and (3) the variance is the minimum variance necessary to afford relief. *Hertzberg.* The burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling. *Valley View.*

Appellants assert that the Board erred in granting each of dimensional variances requested because Applicant did not meet its burden to demonstrate that a hardship, unique to the property, prevents the reasonable use of the property in conformity with the Ordinance. Appellants submit that the property is not unique simply because it wraps around Fergie's pub and is located mid-block between Sansom and Walnut streets. Appellants also aver that the property can be developed as of right by simply reducing the scope of the proposed development. We agree.

■■■ When an applicant seeks a dimensional variance it is merely seeking a reasonable adjustment of the zoning regulations and, therefore, the quantum of proof necessary to establish unnecessary hardship for a dimensional variance is less than that needed to obtain a use variance. *Hertzberg.* In determining if a party has met its burden to demonstrate unnecessary hardship for a dimensional variance, the courts may consider multiple factors, including the economic detriment to the applicant, whether the cost to conform the

property to the zoning ordinance is prohibitive, and the characteristics of the surrounding neighborhood. *Id.* Although a lesser quantum of proof is required to establish unnecessary hardship for a dimensional variance, our Court has interpreted the holding in *Hertzberg* as follows:

Ever since our Supreme Court decided *Hertzberg,* we have seen a pattern of cases arguing that a variance must be granted from a dimensional requirement that prevents or financially burdens a property owner's ability to employ his property *exactly as he wishes,* so long as the use itself is permitted. *Hertzberg* stands for nothing of the kind. *Hertzberg* articulated the principle that unreasonable economic burden may be considered in determining the presence of unnecessary hardship. It may also have somewhat relaxed the *degree* of hardship that will justify a dimensional variance. However, it did not alter the principle that a substantial burden must attend *all* dimensionally compliant uses of the property, not just the particular use the owner chooses. This well-established principle, unchanged by *Hertzberg,* bears emphasizing[.]

*Yeager v. Zoning Hearing Board of the City of Allentown,* 779 A.2d 595, 598 (Pa. Cmwlth.2001) (emphasis in original). In accord, this Court has consistently held that an applicant is not entitled to a dimensional variance under the relaxed standard set forth in *Hertzberg* where no hardship is shown or where the hardship alleged amounts to an applicant's mere desire to increase profitability. *Lamar Advantage GP Company v. Zoning Hearing Board of Adjustment of the City of Pittsburgh,* 997 A.2d 423 (Pa.Cmwlth.2010).

---

(*l*) that the grant of the variance will not adversely affect in a substantial manner any area redevelopment plan approved by City Council or the Comprehensive Plan for the

City approved by the City Planning Commission.
Philadelphia Zoning Ordinance § 14–1802(1)(a)–(*l*).

 Here, Applicant did not present evidence or testimony demonstrating that the allegedly unique physical characteristics of the property limit Applicant's ability to develop the property in conformity with the Ordinance. Rather, Applicant asserts that the property cannot be developed *as proposed*, in a manner that will *maximize* the development potential of the property, without the dimensional variances it seeks. However, it is well-settled that in order to establish unnecessary hardship for a dimensional variance an applicant must demonstrate something more than a mere desire to develop a property as it wishes or that it will be financially burdened if the variance is not granted. *Yeager; Lamar Advantage GP Company.*

Further, taken together, the dimensional variances to exceed the permitted width, reduce the length of the loading dock, exceed the floor-area-ratio, and eliminate all off-street parking result in more than a mere technical or superficial deviation from the terms of the Ordinance; accordingly, Appellants' appropriate remedy is a rezoning of the property. *See O'Neill v. Zoning Board of Adjustment of Philadelphia*, 434 Pa. 331, 254 A.2d 12 (1969) (holding that a dimensional variance for two and one half times the floor space permitted by the Ordinance was not a mere superficial and technical deviation from the terms of the Ordinance and, therefore, that the applicant's appropriate remedy was a rezoning of the property) [3]; *see also One Meridian Partners, LLP v. Zoning Board of Adjustment of City of Philadelphia*, 867 A.2d 706 (Pa.Cmwlth.2005) (holding that a dimensional variance for three times the floor space permitted by the Ordinance was not a mere superficial and technical deviation from the terms of the Ordinance and, therefore, that the applicant's appropriate remedy was a rezoning of the property) [4].

For these reasons, we conclude that the Board erred in determining that Applicant

3. In *O'Neill*, the applicant sought a dimensional variance to construct a high-rise apartment building in center city Philadelphia with a floor-to-area ratio two and one half times that permitted by the Ordinance. The Board granted the applicant the variance and the trial court affirmed. On appeal, our Supreme Court reversed the Board, concluding that the applicant did not meet its burden to demonstrate that the property could not continue to be utilized profitably as a parking lot or for a different purpose permitted by the Ordinance. In so concluding, the court stated as follows:

> While we might be willing to concede that in a given case the quantum of proof required to prove an unnecessary hardship might be less where petitioner is seeking a variance from space requirements than from use requirements, nevertheless this not such a case. First, [applicant] has not presented evidence that the property cannot be profitably used within the present space requirements. Second, [applicant's] apartment building would be more than a mere technical and superficial deviation from the space requirements. The building would contain approximately two and one half times as much floor space as is now permitted under the zoning regulations. In such a situation, [applicant's] remedy would appear to be a rezoning and not a variance.

*O'Neill*, 434 Pa. at 337–38, 254 A.2d at 16.

4. In *One Meridian*, the applicant sought dimensional variances to construct a fifty-story condominium tower that did not comport with the height, floor-area-ratio, lot coverage, curb cut width, number and dimensions of loading areas, and accessory parking requirements of the Ordinance. The Board granted the applicant the dimensional variances and the owner of the adjoining property appealed to the trial court, which reversed the Board. On appeal to this Court, the applicant asserted that it was entitled to the dimensional variances under the relaxed standard for dimensional variances set forth in *Hertzberg*. We reversed the Board, concluding that pursuant to *O'Neill*, a floor-to-area ratio three times that permitted by the Ordinance was not a mere technical or superficial deviation from the terms of the Ordinance and, therefore, that the applicant's appropriate remedy was a rezoning.

met its burden to demonstrate unnecessary hardship for each of the dimensional variances granted.

 Appellants also assert that the Board erred in granting Applicant the use variance to operate a take-out restaurant. Appellants contend that the property can be developed as of right without a take-out restaurant despite the allegedly unique shape of the property, and, therefore, Applicant did not meet its burden to demonstrate unnecessary hardship. Again, we agree.

 In order to establish unnecessary hardship required for the grant of a use variance, an applicant must demonstrate that the property cannot be used for a permitted purpose, that the cost to conform the property for a permitted purpose is prohibitive, or that the property has no value for a permitted purpose. *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh,* 547 Pa. 163, 689 A.2d 225 (1997). Here, the property is currently being utilized as a parking lot, a permissible use under the Ordinance; therefore, the property can be used and has value for a purpose permitted by the Ordinance. Further, Applicant's mere desire to maximize the potential use of the property by including a take-out restaurant is not sufficient to establish unnecessary hardship. *See Society Created to Reduce Urban Blight v. Zoning Board of Adjustment of City of Philadelphia,* 771 A.2d 874, 878 (Pa.Cmwlth.), *appeal denied,* 567 Pa. 733, 786 A.2d 992 (2001) (stating that "just because a person wants to do more with his or her land in addition to the use that it is presently being used for is not a sufficient unneces-

sary hardship unique to that piece of land."); *see also Township of Northampton v. Zoning Hearing Board of Northampton,* 969 A.2d 24, 28 (Pa.Cmwlth.2009) (observing that a variance "is appropriate only where the property, not the person, is subject to hardship") (internal citation omitted). Thus, we conclude that the Board erred in determining that Applicant met its burden to establish unnecessary hardship for the grant of a use variance to operate a take-out restaurant.

For the reasons stated above, we reverse.[5]

### ORDER

AND NOW, this 30th day of September, 2011, the August 5, 2010, order of the Court of Common Pleas of Philadelphia County is hereby reversed.

---

**5.** Because Applicant did not meet its burden to demonstrate unnecessary hardship for the dimensional variances and the use variance to operate a take-out restaurant, this Court need not address whether the Board erred in

determining that Applicant was entitled to the certificates to operate two eat-in restaurants pursuant to section 14–1607(7)(b) of the Ordinance.