IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of Irene Taubenberger : 
from the Decisions dated March 20, : 
2012 and June 3, 2013 of the : 
Warrington Township Zoning : No. 2692 C.D. 2015
Hearing Board : ARGUED:  October 18, 2016
 : 
Appeal of:  Irene Taubenberger :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE JULIA K. HEARTHWAY, Judge
            HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge (P)


OPINION NOT REPORTED


MEMORANDUM OPINION BY
JUDGE HEARTHWAY                    FILED:  December 9, 2016


Appellant, Irene Taubenberger (Objector), appeals from the December 9, 2015, order of the Bucks County Court of Common of Pleas (trial court) affirming two decisions of the Warrington Township (Township) Zoning Hearing Board (Board), each concerning separate variance applications relating to her neighbors' construction of a detached garage.  We reverse in part and affirm in part.

William and Stacey Sills (Applicants) own residential property located at 1555 Stuckert Road, Warrington, Warrington Township, Pennsylvania (Property).  The Property is located in the Township's R-2 Residential Zoning District and is 44,758 square feet (1.0475 acres) in size.  Applicants' Property is improved with a detached single family one-story home including a two-car

attached garage, a rear wooden deck with concrete and paver patio, a front flagstone patio and walkway, and a driveway. The Property also contains a 12 x 12 storage shed, which straddles onto a neighboring property. The storage shed is surrounded by some impervious surface which is located both on Applicants' Property and on the neighboring property to the rear. (2012 F.F. Nos. 2-3.)[1]

On January 23, 2012, Applicants filed a variance application seeking to vary the Warrington Township Zoning Ordinance of 1985 (Ordinance) impervious surface ratio from the maximum permitted 15% to 19.24% in order to construct a 1,421 square foot detached garage (2012 Variance Application). This variance would result in an approximately 30% deviation from the permitted maximum impervious surface under the Ordinance. The Property's existing impervious surface ratio is non-conforming at 16.07%.[2] (2012 F.F. Nos. 4-6, 14.)

On February 27, 2012, the Board held a hearing on the 2012 Variance Application. At the hearing, Applicants presented the testimony of Mr. Sills and their builder. Objector presented the testimony of Kurt Schroeder, a family friend and registered Pennsylvania Engineer. Based on the testimony, the Board made the following findings of fact.

---

[1] The Board issued two decisions, one dated March 20, 2012, and the other dated June 3, 2013. The findings of fact (F.F.) and conclusions of law (C.L.) will cite to the year of the decision to distinguish between them.

[2] The Board could not determine whether this is a lawful nonconformity. (2012 C.L. No. 2.)

2

Mr. Sills testified that he is employed as an auto mechanic in a local Volkswagen (VW) dealership, and he wants to build a garage of this size because he collects VW automobiles. Mr. Sills presently owns six vintage VW automobiles in addition to two automobiles which are used daily by Applicants. Applicants propose to park the two automobiles that are used daily in the existing attached garage, and Applicants would use the proposed detached garage to house all six vintage VW automobiles. (2012 F.F. Nos. 7-9.)

Objector resides immediately adjacent to the portion of Applicants' Property on which the detached garage is proposed. Mr. Schroeder testified that Objector is opposed to the garage because of its size; she does not want a large metal structure in close proximity to her home and in the residential neighborhood. Objector also is concerned about the sounds and sights from the garage, as Mr. Sills indicated he intends to maintain cars within the garage. (2012 F.F. Nos. 10-13.)

The Township took no position on the 2012 Variance Application other than to suggest a condition of appropriate storm water management if it were to be granted. (2012 F.F. No. 17.)

The ZHB concluded that a garage structure was necessary for Applicants to store and maintain the vintage cars under roof. The ZHB also concluded that the existing nonconforming impervious surface makes it impossible for Applicants to construct any reasonably sized detached garage, and therefore, a variance from the impervious surface requirements was needed. The ZHB

3

concluded, however, that Objector established that the size of the garage will result in massing and location that negatively impacts Objector's property and that there would be negative impacts upon surrounding properties and use. Therefore, the Board granted Applicants' 2012 Variance Application, but reduced the size of the garage to 1,200 square feet rather than the proposed 1,421 square feet. Additionally, to ensure the residential character of the neighborhood is maintained, the Board imposed several conditions.[3] (2012 C.L. Nos. 3-9.)

---

[3] The Board imposed the following five conditions: (1) no inoperable vehicles shall be permanently stored outside on the Property; (2) all vehicles stored on the Property shall be titled in the name of one or both Property owner(s) or other family members living in the home; (3) there shall be no commercial use of the detached garage and no air compressors or permanent vehicle lifts installed in the garage; (4) Applicants shall install a storm water management facility to the satisfaction of the Township Engineer; and (5) the existing 12 x 12 shed and the impervious surface in its vicinity must be removed. Additionally, although not a condition, the Board encouraged Applicants to cooperate with their neighbors in designing and installing appropriate landscape buffering. (R.R. at 211a-12a.)

We note that a portion of the shed and surrounding impervious surface is on another neighbor's property. (2012 F.F. No. 3, R.R. at 15-16.) Nonetheless, even considering the reduction in the impervious surface resulting from the Board's 2012 Decision, Applicants would still require a significant variance. Specifically, if we subtract the square footage of the impervious surface of the shed and the surrounding concrete pad that are on Applicants' Property, as well as consider the reduction in the size of the proposed garage to 1,200 square feet, the resulting total impervious surface ratio would be 18.41%, which is a 22.73% deviation from the permitted maximum impervious surface ratio under the Ordinance. *See* Exh.B-1B, 2013 Variance Application hearing (R.R. at 665a) (plan showing that such scenario results in a total impervious coverage on the Property of 8,239 square feet).

The Pennsylvania Municipalities Planning Code ("MPC"), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202, grants zoning hearing boards the specific right to place conditions on the development of property when issuing variances. 53 P.S. § 10910.2(b), *Sombers v. Stroud Township Zoning Hearing Board*, 913 A.2d 306, 313 (Pa. Cmwlth. 2006). However, an applicant must first qualify for a variance before the question of conditions can be addressed. *Jacobs v. Philadelphia Zoning Board of Adjustment*, 273 A.2d 746, 749 (Pa. Cmwlth. 1971).

4

Objector timely appealed to the trial court; however, the appeal was stayed because Applicants had filed a second variance application. That application sought a variance from the height requirement of section 809.2 of the Township Ordinance for the purpose of constructing a detached garage with a roof peak height in excess of the maximum permitted ten feet (2013 Variance Application). (R.R. at 641a.)

The Board held a hearing on the 2013 Variance Application. Mr. Sills testified, and for the first time, submitted into evidence photos concerning other garages in the surrounding area. (R.R. at 176a-84a.) Mr. Sills also presented the testimony of a sales consultant for the company that would build the proposed garage. (R.R. at 158a.) Objector submitted into evidence photos of Applicants' Property. (R.R. at 190a.)

On June 3, 2013, the Board issued its decision on the 2013 Variance Application in which it determined that no variance was required with respect to the height restriction because the proposed structure was not a "utility shed" to which the ten foot restriction applied. Instead, the Board concluded that the proposed structure is a "detached garage" which, under the Ordinance, is an accessory building incidental to single family use. As such, it has no height restriction. However, the Board stated that if a variance were needed, Applicants met their burden of proof. (2013 C.L. Nos. 2-3, 8-10.)

5

Objector timely appealed to the trial court. The trial court entered a stipulated order consolidating the two appeals, (R.R. at 22), and eventually affirmed both decisions of the Board. Objector now appeals to this Court.[4]

We begin by addressing Objector's argument that the ZHB's 2013 Decision was an "impermissible advisory opinion," and that the trial court's affirmation of that decision was error. Objector's characterization of the alleged error is a bit misleading. The gravamen of Objector's complaint is that the Board made findings and conclusions in its 2013 Decision in an effort to support the variance granted in its 2012 Decision. Additionally, the trial court affirmed the Board's 2012 Decision concerning the impervious surface variance based largely on evidence presented after-the-fact at the 2013 height variance hearing. Objector argues that such after-the-fact evidence cannot serve as the basis to grant the 2012 Variance Application.

While we disagree that the Board's 2013 Decision was an "impermissible advisory opinion,"[5] we agree with the substance of Objector's

---

[4] Where, as here, the trial court does not take additional evidence, our scope of review is limited to determining whether the Board committed an error of law or "a manifest abuse of discretion." *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 639 (Pa. 1983). A zoning board abuses its discretion "only if its findings are not supported by substantial evidence." *Id.* at 640.

[5] The Board necessarily had to interpret the Ordinance and determine if the height limitation in section 809.2 of the Ordinance concerning utility sheds even applied to the proposed structure in the 2013 Variance Application. The Board necessarily had to make findings and conclusions in this regard, and Objector does not challenge this specific determination of the Board. However, because the Board concluded that section 809.2 concerning a height restriction was not applicable (and thus Applicants would not need a **(Footnote continued on next page…)**

argument that evidence presented after-the-fact at the 2013 hearing cannot constitute substantial evidence to support the Board's 2012 Decision. Were we to allow that, Applicants would effectively receive a "second bite of the apple."[6]

We will now address Objector's argument that Applicants failed to establish that they are entitled to a variance from the impervious surface ratio limitation.[7]

The Pennsylvania Municipalities Planning Code (MPC)[8] provides that a zoning board may grant a variance where it finds the applicant has established *all* of the following conditions:

> (1)  That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the

---

**(continued…)**

variance), it was unnecessary for the Board to make any findings or conclusions concerning the factors to establish entitlement to a variance, and any such findings or conclusions are dicta.

[6] Nevertheless, for the reasons we will set forth, even if we were to consider all of this evidence as well, it would not alter our decision that Applicants failed to establish that they are entitled to a variance from the Ordinance's impervious surface ratio limitation.

[7] Although Objectors' questions presented refer to variances (plural), Objector limits her argument to the impervious surface ratio limitation. Additionally, as discussed, the Board ruled a height variance was not needed because the height restriction was not applicable. Accordingly, our discussion of the variance relates to the 2012 variance concerning the impervious surface ratio. Nevertheless, to the extent the Board stated that if Applicants were required to obtain a variance for height, they met that requirement, the same analysis would apply because the hardship for the height variance was also the same impervious surface. Accordingly, as will be discussed, this variance would fail, too.

[8] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant [applicant].

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2.

Where, as here, we are faced with a dimensional variance, our Supreme Court has articulated a more relaxed standard for granting a variance. Under this relaxed standard, when addressing the element of unnecessary hardship, "[c]ourts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 721 A.2d 43, 50 (Pa. 1998). Despite

8

this more relaxed standard, it is still the case that "[t]he burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling." *Singer v. Philadelphia Zoning Board of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011).

Objector argues that Applicants are not entitled to a variance from the impervious surface requirements because they did not present any evidence of a unique condition of the Property denying them reasonable use of their Property. Objector also argues that Applicants' desired use of their Property—to store, maintain and repair vintage automobiles—does not constitute the requisite unnecessary hardship to entitle Applicants to a variance.[9] Applicants, on the other hand, argue that the preexisting nonconforming impervious surface precludes them from constructing any detached garage. They argue that the variance is necessary so they can use the Property for the permitted garage use. They also argue that to require them to remove the existing improvements to come into strict compliance with the Ordinance would require excessive costs and pose an unnecessary hardship. In essence, Applicants argue that because the existing structures on their Property already exceed the permitted maximum impervious surface under the Ordinance, they are precluded from building any additional permitted structures without a dimensional variance and that circumstance constitutes a hardship. We agree with Objector.

_____

[9] Objector raises additional arguments concerning the elements for a variance; however, given our disposition, it is not necessary to address those.

Although *Hertzberg* sets forth a more relaxed standard for a dimensional variance, it does *not* stand for the proposition that "a variance must be granted from a dimensional requirement that prevents or financially burdens a property owner's ability to employ his property *exactly as he wishes*, so long as the use itself is permitted." *Yeager v. Zoning Hearing Board of the City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (emphasis in original); *see also Singer* (quoting *Yeager*). Moreover, it has been the law of this Commonwealth that the mere desire for more space does not establish the requisite unnecessary hardship for a variance.

For example, in *Larsen v. Zoning Board of Adjustment of City of Pittsburgh*, 672 A.2d 286 (Pa. 1996), the applicants sought a variance to construct a 400-square foot deck in order to provide a play area for their child. The zoning board granted the variance, finding that the applicants would suffer an unnecessary hardship from the denial of the variance because they would be denied the reasonable use of their land if they could not provide a play area for their child. Ultimately, after a series of appeals, the Pennsylvania Supreme Court ruled that the zoning board erred as a matter of law in granting the variance, and held that the "mere desire to provide more room for a family member's enjoyment fails to constitute the type of 'unnecessary hardship' required by the law of this Commonwealth."[10] *Id.* at 290.

---

[10] The trial court states that *Larsen* is distinguishable because in *Larsen*, there was no legal authority establishing a right of a property owner to have a safe place to play, whereas, here, Applicants are seeking to exercise an express right to build an accessory building on the Property. The trial court's reasoning is flawed because it focuses on the use or purpose of the structure under *Larsen* then shifts to the type of structure when addressing this case. Although the garage here is a permitted use, like *Larsen*, there is no legal authority establishing a right of a

**(Footnote continued on next page…)**

Similarly, in *McClintock v. Zoning Hearing Board of Fairview Borough*, 545 A.2d 470 (Pa. Cmwlth. 1988), this Court denied a dimensional variance where the property could be used for a one-car garage instead of a two-car garage. In *Vito v. Zoning Hearing Board of Borough of Whitehall*, 458 A.2d 620 (Pa. Cmwlth. 1983), we found there was no hardship to grant a dimensional variance to build an addition to an existing two-car garage where the property was useable in its present condition. Recently, in *McEwen v. Zoning Hearing Board of Sadsbury Township* (Pa. Cmwlth., No. 941 C.D. 2015, filed January 5, 2016), 2016 WL 50855, the zoning hearing board granted the applicant a dimensional variance to construct an attached garage on his nonconforming residential lot, and the trial court affirmed. On appeal, this Court reversed, in part because we held that the owner's wife's disability was not a hardship peculiar to the property that would entitle the owner to a dimensional variance.[11]

It "is well-settled that in order to establish unnecessary hardship for a dimensional variance an applicant must demonstrate something more than a mere desire to develop a property as it wishes or that it will be financially burdened if the variance is not granted." *Singer*, 29 A.3d at 150. Applicants have established nothing more than that the ordinance's impervious surface ratio imposes a burden

---

**(continued…)**

property owner to have a place to store and maintain cars. Additionally, in *Larsen*, the deck was a permitted use, just as the garage is here. *See Larsen*, 672 A.2d at 293, n.10 (stating applicants were granted a dimensional variance as opposed to a use variance).

[11] While this Court's unreported memorandum opinions may not be cited as binding precedent, they may be cited for persuasive value. 210 Pa. Code § 69.414.

on their personal desire to store and maintain vehicles under roof. Indeed, the Board found that Applicants desire a detached garage of this size because Mr. Sills is an auto mechanic and he collects VW automobiles as his hobby. (F.F. No. 7.) When asked at the hearing to describe his hardship, Mr. Sills responded, "so that I can have a proper place to store all the vehicles, keep them out of the elements."[12] (R.R. at 122a.) Additionally, Applicants stated in their variance application that their unique circumstance and unnecessary hardship are that "I am an automobile collector and need additional storage space for my vehicles & parts. This will also provide workspace for family projects." (2012 Hearing Exh. B-1, R.R. at 594a.)

A variance "is appropriate only where the *property*, not the person, is subject to hardship." *Yeager*, 779 A.2d at 598. (internal quotation marks and citation omitted, emphasis in original). Following *Larsen*, as well as the aforementioned decisions of this Court, we must conclude that Applicants' mere desire to develop the property as they wish, for the purpose of their own hobby and enjoyment, does not constitute the requisite hardship entitling them to a variance. *See also Yeager*.

Additionally, Applicants do not need the variance to construct the garage in order to make reasonable use of the Property, as they are already doing so. Applicants' Property is improved with, among other things, a single family one-story home including a two-car attached garage. Notably, the existing improvements are the types of uses authorized by the residential district in which

---

[12] Elsewhere, Mr. Sills testified that he also wanted to keep the Property looking presentable. (R.R. at 117a.)

12

the Property lies. *See* Ordinance, § 802, *Yeager* (noting the subject property was well suited to the purpose for which it was zoned and actually used). Because the variance is not necessary to enable Applicants the reasonable use of the Property, Applicants have not met their burden to establish they are entitled to a variance. *See* 53 P.S. § 10910.2, *Yeager*.

Finally, the existing nonconforming impervious surface is not a unique physical condition peculiar to the property. First, the record is simply devoid of any evidence to support a conclusion that this is a unique condition of the Property.[13] Second, if we were to accept the Board's rationale that the existing nonconformity, by itself, is the hardship, anyone with a nonconforming property could establish a hardship and could continue to build on the property and exceed the restrictions in an ordinance. Moreover, those who have already improved their property to the maximum extent permitted, albeit conforming, could similarly argue that the ordinance prevents them from constructing additional improvements, and therefore, they have a hardship. Third, generally, the unique condition must relate to the physical conditions of the land itself and not to man-made improvements, such as poured asphalt and concrete as we have here.

---

[13] Mr. Sills stated his Property was unique because it is his property; he stated that it is similar to a lot of others on the street. (R.R. at 122a.)

The Board failed to make any findings on the uniqueness element. "The failure of a zoning board to consider each requirement of a zoning ordinance prior to granting a variance is an error of law." *Larsen*, 672 A.2d at 289-90. Nevertheless, we need not remand the matter for findings on this where, as here, the record is insufficient to support a variance. *See Hager v. Zoning Hearing Board of Manheim Township*, 352 A.2d 248 (Pa. Cmwlth. 1976).

13

Because Applicants failed to establish that there is a unique condition of the Property which constitutes a hardship, and that the variance is necessary to allow them reasonable use of their Property, Applicants are not entitled to the 2012 Variance Application to construct a garage. Accordingly, we reverse the trial court's order to the extent it affirmed the Board's 2012 Decision granting Applicants' variance from the impervious surface limitation.


_____
JULIA K. HEARTHWAY, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Irene Taubenberger :
from the Decisions dated March 20, :
2012 and June 3, 2013 of the :
Warrington Township Zoning : No. 2692 C.D. 2015
Hearing Board :
:
Appeal of: Irene Taubenberger :

O R D E R

AND NOW, this 9th day of December, 2016, the order of the Bucks County Court of Common Pleas (trial court) is hereby reversed in part and affirmed in part. The trial court's order is reversed to the extent that it affirmed the decision of the Warrington Township Zoning Hearing Board dated March 20, 2012, granting a variance from the impervious surface ratio limitation. The trial court's order is affirmed to the extent that it affirmed the decision of the Warrington Township Zoning Hearing Board dated June 3, 2013, determining that section 809.2 of the Warrington Township Zoning Ordinance of 1985 did not apply to the proposed structure.

_____
JULIA K. HEARTHWAY, Judge