IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diane M. Riccio,                                :
             Appellant                  :
                                   :
             v.                       :   No.   636 C.D. 2021
                                   :
Newtown Township Zoning          :   Submitted:  December 4, 2023
Hearing Board and Lawrence and  :
Alicia Robinson                          :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE McCULLOUGH                          FILED: January 12, 2024

        Diane M. Riccio (Riccio) appeals from the order of the Court of Common Pleas of Delaware County (trial court), dated May 11, 2021.  The trial court's order affirmed the decision of the Newtown Township Zoning Hearing Board (ZHB), dated January 22, 2020, which granted Lawrence and Alicia Robinson's (Robinsons) application for a dimensional variance.  After review, we affirm.

## I. Factual Background

        Lawrence Robinson obtained title to the property (Property) from the Estate of James T. Kelly by Deed dated March 27, 2008, and recorded it with the Delaware County Recorder of Deeds at Deed Book 4329, Page 1941.  (Trial Court's Order May 11, 2021, Findings and Conclusions (Tr. Ct. F.) 3.)  Pursuant to Section 172-34(B)(1) of the Township's Zoning Ordinance (Ordinance)[1] the Property is required to have a minimum lot area of 12,000 square feet to construct a building or

---

[1] Newtown Twp., Del. Cnty., Pa., Zoning Ordinance § 172-34(B)(1).

dwelling thereon. The Property has a minimum lot area of only 8,865 square feet. *Id.* 9.

Simultaneously with his acquisition of the Property, Lawrence Robinson obtained title to the contiguous parcel containing a residential dwelling, known and identified as 218 Fourth Avenue, Newtown Township, Delaware County Folio No. 30-00-01029-00 (Contiguous Property) (collectively, the Property and Contiguous Property are sometimes hereinafter referred to as the Robinson Properties). *Id.* 3. The Contiguous Property was transferred to Lawrence Robinson by the Estate of James T. Kelly by Deed dated March 27, 2008, and recorded with the Delaware County Recorder of Deeds at Deed Book 4329, Page 1944. *Id.* 4. Lawrence Robinson then conveyed the Robinson Properties to himself and his wife, Alicia Robinson, by Deed dated August 11, 2008, and recorded with the Delaware Country Recorder of Deeds at Deed Book 4422, Page 0766. *Id.* Although the Robinson Properties were conveyed via a single deed in this particular transaction, each of the parcels was described with separate legal descriptions, maintained their individual Delaware County Tax Folio Numbers, and continued to be taxed as separate parcels. *Id.*

## II. Procedural History

In August 2008, the Robinsons filed an application with the ZHB seeking a dimensional variance from the minimum lot area requirements of Ordinance Section 172-34(B)(1) with respect to the Property for the construction of a single-family dwelling. (Supplemental Reproduced Record (R.R.) at 95b.) The application was ultimately voluntarily withdrawn without prejudice, and no decision was ever rendered by the ZHB. *Id.*

On August 15, 2016, the Robinsons filed a new application with the ZHB, seeking a dimensional variance from the minimum lot area requirements of Section

2

172-34(B)(1) of the Ordinance to permit the construction of a single-family dwelling on the Property. *See Riccio v. Newtown Township Zoning Hearing Board* (Pa. Cmwlth. No. 1788 C.D. 2017, filed September 10, 2019).

On October 20, 2016, a quorum of the ZHB voted unanimously to approve the requested dimensional variance. *Id.* Riccio appealed the ZHB's order to the trial court, which affirmed the ZHB's order and denied Riccio's appeal. *Id.* Subsequently, Riccio appealed the trial court's decision to this Court. By Memorandum Opinion dated September 10, 2019, this Court reversed the trial court's order and remanded the case to the trial court with instructions to vacate the ZHB's October 20, 2016 decision on the basis that the ZHB's appointment of a hearing officer for the September 15, 2016 hearing was done without a quorum and, therefore, was invalid. *Id.* A decision on the underlying merits of the ZHB's decision granting the Robinsons' dimensional variance request was not reached. *Id.*

On December 19, 2019, a new hearing was held before a quorum of the ZHB. (R.R. at 31b-151b.) The Robinsons presented the testimony of Dennis O'Neill, P.E., and Lawrence Robinson, in support of the Application, and further submitted all the documents which had been presented at the 2016 hearing plus a few additional documents. *Id.* After being accepted as an expert in the field of civil engineering as it relates to zoning, subdivision and land development, Mr. O'Neill gave a detailed history of the Property, going through the Robinsons' chain of title and identifying the Property on the original 1924 Subdivision Plan. *Id.* at 46b-49b. As noted by O'Neill, the original 1924 subdivision resulted in the creation of predominately 20-foot-wide lots throughout the Property's neighborhood, all of which are smaller than the 12,000-foot minimum lot requirements now required under the Zoning Ordinance. *Id.* Mr. O'Neill described a current Delaware County Tax Map. *Id.* He confirmed that other

than the requested dimensional variance from the minimum lot size requirement, the Robinsons' proposed development of the Property would meet all the Township zoning requirements. *Id.* at 51b-52b, 85b. Mr. O'Neill further opined that due to the Property's size and shape, the lot could not be developed without the requested dimensional variance, that the variance requested represented the minimum relief necessary to permit a reasonable development of the Property, and that, if granted, the dimensional variance would not alter the essential character of the neighborhood, substantially impair the use or development of the adjacent property or be detrimental to the public's welfare. *Id.* at 60b-61b. Mr. O'Neill concluded his testimony by describing a portion of a "block plan" maintained by and obtained from the Delaware County Assessor's Office, showing the Property and the Contiguous Property, noting the dimensions of each lot, and referencing the original lot numbers from the 1924 Subdivision Plan. *Id.* at 65b-69b. Mr. O'Neill testified that based upon his expertise in the field, the "Z" placed through the adjoining lot line of the Robinson Properties signified that the properties were "separate lots owned by the same individual." *Id.* at 66b-67b. Mr. O'Neill then described the process in the Township that a property owner would have to undertake to merge two separate, adjoining tax parcels into one lot. *Id.* at 68b-69b. Mr. O'Neill testified that in order to formally merge the Robinson Properties into a single property after the Township's enactment of the minimum lot requirement in 1959, the property owner would have been required to obtain approval of a "reverse subdivision" plan from the Township in accordance with the Township's Subdivision and Land Development Ordinance, and then record that approved plan with the Delaware County Recorder of Deeds. *Id.* at 69b. All future deeds would then reference that reverse subdivision plan in their description of the newly created merged

4

lot. *Id.* In this case, Mr. O'Neill stated that no such lot consolidation or "reverse subdivision" plan was ever recorded. *Id.*

Lawrence Robinson testified next, discussing the acquisition of the Robinson Properties and the subsequent deed transfers. He testified that the Properties were advertised as two separate lots, that each maintained a separate "for sale" sign and was taxed separately, and that he received two separate deeds at settlement. *Id.* at 88b. After purchase of the Properties, the Robinsons rented the Contiguous Property to a tenant, who has since been notified of the Robinsons' petition for variance and the plans to develop the Property. *Id.* at 103b-104b.

Following the conclusion of the Robinsons' case, Riccio presented her case in opposition to the Robinsons' request for a dimensional variance. It was Riccio's position that the Property and Contiguous Property (which already contained a single-family dwelling) are one single lot and, therefore, the single lot needed to be subdivided before the Robinsons could seek a dimensional variance. Riccio argued that the Robinsons were trying to circumvent this step by claiming that the Property and Contiguous Property are already two separate lots and to subdivide the one lot would create a hardship which is not permitted when seeking a variance. That is, the Robinsons would be creating their own hardship (one lot would only be 8,865 square feet) and would be denied any variance. Riccio first presented the testimony of John Schmidt, Executor for the Estate of John Kelly, who executed the deeds conveying the Robinson Properties to Lawrence Robinson. Schmidt confirmed that the Properties maintained two separate tax folio numbers and testified that he sold the Robinson Properties in a manner to maximize value. *Id.* at 111b.

Next, Riccio testified on her own behalf, discussing her recollection of the use of the Robinson Properties during her time growing up in her home across the

5

street. *Id.* at 113b-114b. Riccio described how her parents subdivided their own property in 1976 to build on the lot upon which Riccio's house now sits. *Id.* She presented a deed which confirmed that, unlike the Robinson Properties, which have always maintained two tax folio numbers, her parents' property originally consisted of only one tax folio number prior to the approval of the subdivision. *Id.* at 126b-127b. Riccio further attempted to submit a 2008 letter from the prior ZHB Solicitor purportedly offering an opinion as to the Robinsons' proposed development, first during cross-examination of Lawrence Robinson and then again during the presentation of her own case. *Id.* at 97b, 120b. Objections to the prior ZHB Solicitor's letter were sustained on the basis of hearsay and the Robinsons' inability to cross-examine its drafter. *Id.*

Riccio then closed her case by submitting letters from various neighbors, who purportedly supported her opposition to the dimensional variance. *Id.* at 133b-134b. Three other neighbors then provided comments in opposition to the dimensional variance, offering statements generally in line with Riccio's statements that the proposed new construction on the Property would not be compatible with the existing development of the neighborhood. *Id.* at 143b-145b.

On January 15, 2020, Riccio emailed the ZHB Solicitor asking to reopen the matter, stating that she believed there were procedural deficiencies in relation to the variance approval process by the ZHB. On January 16, 2020, the ZHB voted unanimously to approve the grant of a dimensional variance and denied Riccio's request to reopen the matter. *Id.* at 27b-28b. Riccio appealed to the trial court.

On April 19, 2021, the trial court held a hearing in which Riccio participated remotely at her request and wherein there was no additional testimony provided, and the parties relied on the record from the December 19, 2019 hearing, and

6

provided the trial court arguments as to their respective positions. On May 11, 2021, the trial court issued its order denying Riccio's Land Use Appeal. Riccio filed a Notice of Appeal, and the trial court ordered Riccio to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(b). After Riccio complied, the trial court issued its 1925(a) Opinion on July 6, 2021. In its opinion, the trial court concluded that the ZHB had not abused its discretion or committed an error of law in granting the dimensional variance.

This appeal followed.

### III. Issues

On appeal,[2] Riccio presents eight issues.[3] We summarize the issues as follows: (1) whether Riccio's right to due process was violated; (2) whether the Property is a separate lot or a portion of a larger property, inclusive of the Contiguous Property, thus rendering a dimensional variance impossible to obtain since the hardship would have been self-created by the Robinsons in subdividing and creating an undersized and nonconforming lot; (3) whether approval of the dimensional variance was supported by substantial evidence; and (4) whether the trial court erred by allowing the Robinsons to supplement the record with a copy of their timely acceptance of the ZHB's decision during the oral argument.

---

[2] Because the trial court took no additional evidence, our standard of review is restricted to determining whether the ZHB committed an abuse of discretion or an error of law. *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 639-40 (Pa. 1983). "We may conclude that the [ZHB] abused its discretion only if its findings are not supported by substantial evidence . . . . By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 640 (citations omitted).

[3] The issues raised by Riccio are identical to the issues she raised in the trial court. The trial court summarized the issues in four separate categories to avoid redundancy and we do the same.

## IV. Discussion

### A. Due Process

In her first issue, Riccio argues that the trial court erred in determining that her due process rights were not violated and that the ZHB did not commit an abuse of discretion when it lost several of her exhibits and showed clear bias throughout the hearing. Riccio also contends that her due process rights were denied when the trial court granted her request to participate in the April 19, 2021 hearing remotely while failing to notify Riccio that the Robinsons would be attending in person. Riccio further asserts that her right to due process was violated by the trial court when it refused to rule on the issue of variance expiration.[4] Riccio also contends that the trial court violated her right to due process in determining there were no procedural defects during the December 19, 2019 hearing before the ZHB.[5]

---

[4] One of the issues Riccio argued before the trial court was variance expiration. She argued that the Robinsons did not seek a building permit or an extension of their initially approved zoning variance within six months of the decision of the ZHB as per a Newtown Township Ordinance requirement, thus rendering the approval moot. However, the trial court stated:

> This question is outside the scope of review of the trial court, which may only consider whether the ZHB abused its discretion or committed an error of law. New evidence may not be introduced. The alleged expiration was not an issue of record before the ZHB at the time of December 19, 2019 hearing and is not a part of the ZHB's decision on appeal in this case.

(Tr. Ct. F. 44-45.)

[5] On appeal to the trial court, Riccio asserted the violation of her due process rights by alleging that the ZHB violated provisions of the Sunshine Act. 65 Pa. C.S. §§ 701-716. On appeal to this Court, Riccio raises an entirely different issue, namely that the ZHB did not have to strictly comply with the Pennsylvania Rules of Civil Procedure, and her hearsay evidence should have been accepted. This issue has been waived. Issues not raised in the trial court are waived and cannot be raised on appeal. *Commonwealth v. Piper*, 328 A.2d 845 (Pa. 1974); *Dilliplaine v. Lehigh Valley Trust Co.*, 322 A.2d 114 (Pa. 1974); *Appeal of Lawrence Township*, 544 A.2d 1070 (Pa. Cmwlth. 1988).

A zoning hearing board is a quasi-judicial entity. Pennsylvania case law has determined that a ZHB serves in a quasi-judicial manner by engaging in fact-finding and deliberative functions in a manner similar to a court. *Baribault v. Zoning Hearing Board of Haverford*, 236 A.3d 112, 120 (Pa. Cmwlth. 2020) (quotations omitted). A fair trial before a fair tribunal is a basic and fundamental due process requirement. *Atherton Development Company v. Township of Ferguson*, 29 A.3d 1197, 1212 (Pa. Cmwlth. 2011) (quotations omitted). Thus, where a municipal tribunal is acting in an adjudicatory role it must abide by due process standards and avoid the appearance of impropriety. *Id.*

Fundamentally, due process affords a party notice and an opportunity to be heard. *Weaver v. Franklin County*, 918 A.2d 194, 203 (Pa. Cmwlth. 2007). Due process principles require an opportunity, among other things, to hear evidence adduced by an opposing party, cross-examine witnesses, introduce evidence on one's own behalf, and present argument. *See Panzone v. Fayette County Zoning Hearing Board*, 944 A.2d 817, 821 (Pa. Cmwlth. 2008). The key factor in determining whether procedural due process is denied is whether the party asserting the denial of due process suffered demonstrable prejudice. *Smith v. City of Philadelphia*, 147 A.3d 25, 32 (Pa. Cmwlth. 2016) (quotations omitted).

The Court recognizes that due process requires a local governing body in the performance of its quasi-judicial functions to avoid even the appearance of bias or impropriety. *Kuszyk v. Zoning Hearing Board of Amity Township*, 834 A.2d 661, 665 (Pa. Cmwlth. 2003). A showing of actual bias on the part of a zoning hearing board is unnecessary in order to assert a cognizable due process claim; the mere potential for bias or the appearance of non-objectivity may be sufficient to constitute a violation of that right. *Id.*

9

*Missing Exhibits*

Riccio alleges that the ZHB misplaced her exhibits and that, therefore, the record before the trial court was incomplete, rendering it unable to make a fair and impartial decision on appeal. The exhibits that Riccio alleged were misplaced included a copy of the Deed to the Property from 2008 and several letters from neighbors. These exhibits were originally entered into the record during the December 19, 2019 hearing. At some point between that hearing and the April 19, 2021 hearing before the trial court, the ZHB was unable to locate them. The trial court found that the absence of the exhibits had no bearing on the case because the Deed to the Property was already part of the ZHB's record as part of the Robinsons' evidence. Additionally, it concluded that the opinions of neighbors expressing concerns about a new home on the Property at the December 19, 2019 hearing were consistent with those allegedly contained in the missing exhibits.

We discern no error on the part of the trial court. First, with respect to the Deed, the trial court was provided a copy of the Deed. The Robinsons testified and offered exhibits of official deeds and real estate transfer reports detailing the chain of ownership. So, the loss of the deed exhibit was inconsequential. With respect to the neighbors' letters, the trial court found that they were merely cumulative of other evidence and did not contain any information that was not available elsewhere on the record.[6] As noted by the trial court, "[t]here is no reason to believe the position of the neighbors in the three letters allegedly lost differed substantially from the testimony of neighbors at the hearing." (Trial Court Op. at 10.)

_____

[6] It is unclear why Riccio did not seek to supplement the record with the missing exhibits on appeal to the trial court.

10

To demonstrate prejudice resulting from the lost evidence necessary to rise to the level of a due process violation, an appellant must demonstrate actual harm or prejudice resulting from the loss of the evidence. *See Zevallos v. Obama*, 793 F.3d 106 (3d Cir. 2015); *see also J.C. v. Department of Public Welfare* (Pa. Cmwlth., No. 178 C.D. 2009, filed Dec. 17, 2009), slip op. at *4.[7] (A claimant must show "in what specific manner the missing witnesses would have aided the defense . . . [and/or] that the lost testimony or information is not available through other means") (internal citations omitted). "It is not sufficient . . . to make speculative or conclusory claims of possible prejudice," the [a]ppellant must "show in what specific manner missing [evidence] would have aided the [case]." *Commonwealth v. Scher*, 803 A.2d 1204, 1222 (Pa. 2002); *Smith*, 147 A.3d at 32 ("key factor in determining whether procedural due process is denied is whether the party asserting the denial of due process suffered demonstrable prejudice").

Here, Riccio has failed to demonstrate how any of the missing evidence resulted in prejudice, would have changed the outcome of the trial court's decision, or is not contained elsewhere in the record. As noted, the Property's historical deeds and the neighbor opinion letters purportedly contain information available elsewhere in the record, as the Robinsons submitted a complete chain of title of the Property's deed dating back to 1924, and three neighbors testified at the hearing with regard to their objections to the development of the Property. In sum, Riccio did not show she was harmed by the missing exhibits. Accordingly, we decline to reverse the trial court on this basis.

---

[7] We may cite an unreported case for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

*Bias*

Riccio next argues that during the December 19, 2019 hearing before the ZHB, she "found herself experiencing . . . antagonism, unfair treatment and clear bias toward [her] and favoritism of [the Robinsons]." (Appellant's Brief at 12.) She alleges that the ZHB's bias prevented it from "equally weigh[ing] the testimony of [Riccio] and the neighbors who provided testimony or public comment" and prohibited her from having a "meaningful opportunity to be heard." *Id.* Riccio presents the following excerpt from the ZHB's December 19, 2019 hearing as evidence of bias by the Chairman:

> Ms. Riccio: First of all, you shouldn't be sustaining before he objects. That is not fair.
>
> The Chairman: But you keep doing the same thing over and over again.
>
> [Robinsons' Counsel]: Your whole last ten minutes has been objectionable.

(Notes of Testimony (N.T.) Hearing 12/19/19, p. 99; R.R. at 126b.)

"Judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Penn Street, L.P. v. East Lampeter Township Zoning Hearing Board*, 84 A.3d 1114, 1147 (Pa. Cmwlth. 2014) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Furthermore, "expressions of impatience, dissatisfaction, annoyance, and even anger . . . remain immune" from establishing improper bias or partiality. *Commonwealth v. Kearney*, 92 A.3d 51, 61 (Pa. Super. 2014) (quoting Liteky, 510 U.S. at 555-56).

Here, the above quoted excerpt refers to objections by the Robinsons' counsel to Riccio when she attempted to present hearsay testimony. There is nothing in the excerpt which leads this Court to believe that the Chairman was necessarily biased against Riccio. Rather, it appears that the Chairman was pointing out to Riccio that she kept making the same mistake. While the Chairman's comment may have expressed impatience and annoyance with Riccio's continued attempts to introduce improper hearsay evidence and her general unpreparedness for the hearing, the record demonstrates that the Chairman ultimately allowed her evidence to be admitted as part of the record over the Robinsons' counsel's objection. Also, as noted by the trial court, the ZHB, on occasion, even accommodated Riccio, thus, negating any claims of overt bias on the part of the ZHB which could even possibly rise to the level required under the law to support a due process violation. In addition, there is no evidence that Riccio was not given the opportunity to present evidence and make her case. She was permitted to enter items into the record, to provide testimony and cross-examine witnesses, to file her Land Use Appeal and be heard in the trial court, and to file an appeal to the trial court's decision.

To the extent Riccio relies on *Haines v. Kerner*, 404 U.S. 519 (1972), to argue that the ZHB was biased for failing to give her extended leeway as a *pro se* litigant, she misinterprets the holding of that case. *Haines* stands for the proposition that a *pro se* litigant should not be prohibited from having her day in court due to a mere technical deficiency in a legal pleading. *Id. Haines* does not preclude a zoning hearing board from forbidding a *pro se* litigant to present clearly inadmissible hearsay and other evidence over the objection of another party – in this case, the Robinsons – simply because the Robinsons were represented by counsel and Riccio was not.

13

The ZHB's decision to limit the introduction of Riccio's hearsay evidence was necessary to protect the Robinsons' right inherent under the Pennsylvania Municipalities Planning Code (MPC) "to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues." Section 908(5) of the MPC, 53 P.S. § 10908(5);[8] *Walker v. Unemployment Compensation Board of Review*, 367 A.2d 366, 370 370 (Pa. Cmwlth. 1976) (The law is well established that "[h]earsay evidence, properly objected to, is not competent evidence to support a finding of the [zoning hearing board].") The law does not require that the Robinsons' right to a fair proceeding be usurped by Riccio's desire to discount basic rules of evidence and present incompetent evidence due to her *pro se* litigant status. The record before the ZHB and trial court clearly demonstrates that Riccio's claims of improper bias and procedural errors are unfounded. Accordingly, we will not reverse the trial court's opinion on this basis.

### *Remote Hearing*

For the first time in this appeal, Riccio raises an objection to the trial court's accommodation **of her own** request to participate in oral argument on her Land Use Appeal by remote technology due to her concerns related to the COVID-19 pandemic. Without any explanation as to how she may have been disadvantaged, Riccio takes the position that she was not given "a meaningful opportunity to be heard" by her remote participation while other parties in the hearing were allowed to participate in-person. *See* Appellant's Brief at 17. Riccio argues that the trial court violated her due process right when it held its April 19, 2019 hearing in person despite granting Riccio's request to appear virtually. In other words, Riccio asserts that when she requested to appear virtually to ensure personal health and safety due to the

---

[8] Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

pandemic, the trial court disadvantaged her by failing to notify her that the Robinsons would be attending in person.

As an initial matter, Riccio has waived this claim by failing to raise any objection before the trial court. As noted in the trial court's opinion, Riccio did not raise any objections to the hearing procedure during or after oral argument even after she became aware that other parties were present in the courtroom. She cannot raise the issue for the first time in this Court. Issues not raised in the trial court are waived and cannot be raised on appeal. *Commonwealth v. Piper*, 328 A.2d 845, 874 (Pa. 1974); *Dilliplaine v. Lehigh Valley Trust Co.*, 322 A.2d 114, 117 (Pa. 1974); *Appeal of Lawrence Township*, 544 A.2d 1070, 1074 (Pa. Cmwlth. 1988).

Even if the claim was not waived, we would conclude that the trial court did not err or abuse its discretion in the manner it conducted the hearing. First, Riccio's brief is devoid of any explanation of how the trial court's accommodation of her request negatively impacted her ability to participate in the argument or prejudiced her in any way. Nor does she convey how such procedure would be disadvantageous or unfair to her interest in the case. Again, Riccio received a notice that oral argument before the trial court would be held on April 19, 2021, in person. She requested to appear virtually, and her request was approved. Riccio was not precluded from participating in the hearing. She did not raise any objections during that hearing related to the presence of other parties in the courtroom or explain how that might have disadvantaged her. At the time of the hearing, pursuant to local and the Center for Disease Control's health regulations, in-person hearings were being permitted in Delaware County. Riccio did not present any evidence to show that those in the courtroom had any specific advantages related particularly to being in person.

15

Moreover, despite the fact that she was not present in person, Riccio was afforded an opportunity to be heard during a fair trial before a fair tribunal. *Atherton Development Co.*, 29 A.3d at 1212 (Pa. Cmwlth. 2011). Riccio participated in the hearing, submitted briefs on the issues, and was able to make her arguments to the trial court. There was no evidence that, by appearing remotely during the trial court's hearing, she was at any legal disadvantage or suffered any bias. Accordingly, we find this issue to be wholly without merit.

**B. Separate Lots**

In her next issue, Riccio argues that the ZHB's conclusion that the Property was a distinct and separate lot from the Contiguous Property was not supported by substantial evidence. Riccio asserts that the Property and Contiguous Property should have been considered one single lot. She contends that the Property is a portion of a larger property inclusive of the Contiguous Property and therefore subject to subdivision before it can be built upon, thus rendering a variance impossible to obtain since the hardship would have been created by the Robinsons in subdividing and creating an undersized and nonconforming lot. Riccio asserts, because the Property and Contiguous Property were previously used as one parcel, with one tenant and in single ownership with one address, subdivision was required before a house can be constructed on the Property. Riccio provides evidence such as the presence of a trampoline on the Property, and a car being parked there in support of her argument.

Riccio also relies on *DiCicco v. City of Philadelphia* (Pa. Cmwlth., No. 2625 C.D. 2015, filed May 10, 2017), for the proposition that two separately deeded and legally described parcels may be considered one lot for zoning purposes. We find *DeCicco* to be inapposite.

16

In *DiCicco*, two lots were created by a subdivision in 1923. In 1952, the then-owners of the properties constructed a single-family home directly in the center of the combined lot line. *Id.*, Slip op. at 2. In 2014, the landowners filed two applications for zoning/use registration permit proposing a single-family house at 9613 Evans Street and a single-family house at the adjacent parcel at 9615 Evans Street. *Id.* The Philadelphia Department of Licenses and Inspections (L&I) denied the landowners permission to build the two houses on two lots. The landowners appealed to the Zoning Board of Adjustment in Philadelphia (ZBA), arguing that the parcels were separate tax parcels and were never formally consolidated, they bought the property in 2013, and the property was conveyed to them under a single deed that included separate legal descriptions for the two parcels. *Id.*, Slip op. at 4. They argued that, therefore, the property should be treated as two individual, nonconforming lots. The ZBA found that L&I did not err by recognizing the property was a single lot. *Id.*, Slip op. at 10. There was a single-family home that straddled both parcels. The property also had a single postal address and a single tax account number with the City's assessment office, which the property continued to maintain up until the time the landowners sought to develop the smaller lot. *Id.*

Here, unlike the property in *DiCicco*, no building or other improvements are shared between the Property and the Contiguous Property or maintained at or near the shared boundary line. Most importantly, however, is the undisputed fact that the Property has always maintained a single tax folio number **separate from** the Contiguous Property. Finally, here, the Township's Zoning Ordinance, defines a "lot" as "a single tax parcel, notwithstanding that a deed may contain reference to several lots." (Newtown Township Ordinance § 172-2.)

17

Riccio further cites *West Goshen Township v. Crater*, 538 A.2d 952 (Pa. Cmwlth. 1988), in support of her position, where this Court held that the subjective intent of the owner was insufficient to prove that an adjoining lot was held in single and separate ownership from the owner's neighboring lot. We find Riccio's reliance on *West Goshen* is also misplaced. In that case, the Court ultimately concluded that the owner's lot was not held in a single and separate ownership as a result of the various provisions of the ordinance, which defined a "lot" as "a tract or parcel of land held in single and separate ownership," and noted the lack of objective evidence that the lot in question was separate and distinct. *Id.* at 955-56. The Court did not provide examples of objective evidence, but rather stated, "trial courts have found the lack of single and separate ownership in cases where lots have been fenced together as one integrated unit and maintained as a unified parcel of residential property; where a lot has been used as an appurtenance to the residence as if the same were on an integrated tract of land; and where lots were incorporated into one larger building lot which was utilized for the purpose of erecting a single family dwelling. *Id.* at 955. Unlike *West Goshen*, the Newtown Township's Ordinance defines a "lot" as "a single tax parcel, notwithstanding that a deed may contain reference to several lots," and substantial objective evidence was presented by the Robinsons to establish that the Property was maintained as a separate lot. Additionally, the Robinson Properties were not subject to a similar merger ordinance as applied in *West Goshen*.

The evidence of record supports the ZHB's conclusion that the Robinson Properties were separate lots for which no subdivision was required, and the trial court did not err in affirming that decision. The Properties have maintained separate tax folio numbers for as long as investigation could reveal and the expert testimony by civil engineer Dennis O'Neill supports the fact that the past conveyance of the Robinson

18

Properties by a single deed could not have resulted in a merging of the lots, as it can only occur through a formal "reverse subdivision" process, no evidence of which exists. (R.R. at 68b-69b.) Accordingly, we find this issue without merit.

### C. Dimensional Variance

Next, Riccio argues that the ZHB's decision to grant the dimensional variance was not supported by substantial evidence. Specifically, she argues that the ZHB erred by granting the variance in absence of a finding of unique hardship.

"It is the function of the [ZHB] to determine whether the evidence satisfies the criteria for granting a variance." *Marshall v. City of Phila*delphia, 97 A.3d 323, 331 (Pa. 2014); *see also* 53 P.S. § 10910.2.[9] The Pennsylvania Supreme Court declared in *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43 (Pa. 1998):

> When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation.

*Id.* at 47. This Court explained:

> [I]n *Hertzberg*, our Supreme Court set forth a more relaxed standard for establishing unnecessary hardship for a dimensional variance, as opposed to a use variance.
>
> Under *Hertzberg*, courts may consider multiple factors in determining whether the applicant established unnecessary hardship for a dimensional variance. These factors include the cost of the strict compliance with the zoning ordinance, the economic hardship that will result from denial of a

---

[9] Section 910.2 of the MPC, added by the Act of December 21, 1988, P.L., 1329.

19

variance, and the characteristics and conditions of the surrounding neighborhood.

*Tri-County Landfill, Inc. v. Pine Township Zoning Hearing Board*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014).

Despite the relaxed standard, "[t]he burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling." *Singer v. Philadelphia Zoning Board of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011). Moreover, notwithstanding that an application is for a dimensional variance, "[t]he same criteria apply to use and dimensional variances," meaning that "[a]n applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship." *Tidd v. Lower Saucon Township Zoning Hearing Board*, 118 A.3d 1, 8 (Pa. Cmwlth. 2015).

Here, the lot size of the Property is less than that required by the Ordinance, making compliance with the Ordinance impossible. The lot therefore constitutes a non-conforming lot. An undersized lot constitutes the physical circumstances which may entitle one to a variance provided the other variance criteria are met. *N. Pugliese, Inc. v. Palmer Township Zoning Hearing Board*, 592 A.2d 118, 121 (Pa. Cmwlth. 1991); *Jacquelin v. Zoning Hearing Board of Hatboro Borough*, 558 A.2d 189 (Pa. Cmwlth. 1989). As we noted in *West Goshen*, "[w]here a lot is too small to conform with the minimum lot area requirements, and cannot be made to conform by merging lots or by re-subdividing a larger tract, enforcement of the ordinance would sterilize the land, creating the necessary hardship which will justify the granting of a variance." 538 A.2d at 955.

The Robinsons established that the development of the Property will not alter the essential character of the neighborhood or district since they propose to build a single-family dwelling on the Property in an area of other similar homes. At the ZHB

20

hearing, the Robinsons' expert, Mr. O'Neill, testified credibly that the Property met all other setback requirements, except the minimum lot area. Regarding minimum square footage, Mr. O'Neill testified that the Property came very close to minimum lot area requirements and can meet stormwater management requirements. He testified that of 41 parcels that border Fourth Avenue, 28 parcels, not including the Property, do not comply with the regulations of the Zoning Ordinance. He further testified that the average lot area for the properties bordering Fourth Avenue is 9,805 square feet. He stated that the proposed lot, at 8,865 square feet, is 90.4% of the average lot area. Mr. O'Neill testified that the dimensional variance would not alter the essential character of the neighborhood, impair the appropriate use or development of adjacent property, or be detrimental to public welfare because it will meet all other setback requirements and all the impervious and building coverage; if the variance is authorized it will represent the minimum variance that will afford relief and the least modification of regulation. Mr. O'Neill testified as to the history of the neighborhood, in which many existing homes sit on lots that under zoning ordinance standards enacted in 1959, would not meet minimum square footage criteria. Riccio did not provide any expert testimony to contradict the testimony of Mr. O'Neill.

Based upon the substantial evidence presented, the trial court did not err by concluding that the Robinsons established their entitlement to a dimensional variance.

### D. Acceptance Provision

In her final argument, Riccio contends that the Robinsons did not satisfy a condition of approval of the variance by failing to accept the ZHB's decision within ten days, as mandated by the ZHB, thereby resulting in the deemed denial of the Robinsons' request.

However, as the trial court pointed out, the Zoning Officer testified before the trial court at the April 19, 2021 hearing that the signed acceptance letter was timely received via email by both, the ZHB's counsel and the Township office. (Tr. Ct. Order 5/11/2019, F. 49.) Additionally, the Robinsons' counsel provided a copy of a letter dated January 22, 2020, signed by the Robinsons' counsel indicating both approval and acceptance of the ZHB's decision. *Id.* at 50. Therefore, contrary to Riccio's assertions, the Robinsons did comply with the requirement. We discern no error.

### V. Conclusion

For the foregoing reasons, this Court affirms the May 11, 2021 order of the trial court denying Riccio's Land Use Appeal.

_____
PATRICIA A. McCULLOUGH, Judge


Judge Fizzano Cannon did not participate in the decision for this case.

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diane M. Riccio,                :
           Appellant        :
                            :
          v.            :   No.   636 C.D. 2021
                            :
Newtown Township Zoning    :
Hearing Board and Lawrence and  :
Alicia Robinson             :

## ***ORDER***

AND NOW, this 12th day of January, 2024, the order of the Delaware County Court of Common Pleas entered May 11, 2021, hereby is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge