IN THE COMMONWEALTH COURT OF PENNSYLVANIA

JMAC Investments, LLC, : 
                             Appellant : 
                                        : 
                v. :      No. 68 C.D. 2025
                                        :      Argued: February 4, 2026
Lower Southampton Township : 
Zoning Hearing Board and Lower : 
Southampton Township : 

BEFORE:    HONORABLE MICHAEL H. WOJCIK Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT            FILED: April 6, 2026

        JMAC Investments, LLC (Owner) has appealed an order of the Court of Common Pleas of Bucks County (trial court) that denied Owner's land use appeal. Owner proposes to build a two-story single-family dwelling in the residential zoning district of Lower Southampton Township (Township). The trial court affirmed the Township Zoning Hearing Board's (Zoning Board) denial of Owner's dimensional variance applications. On appeal, Owner argues that the trial court and the Zoning Board erred in: (1) holding that its property had merged with a contiguous property and, thus, did not meet the minimum lot size and lot width requirements in the Township Zoning Ordinance;[1] (2) denying variances from side and rear yard setback requirements in the Zoning Ordinance; and (3) denying a variance from the

---

[1] LOWER SOUTHAMPTON TOWNSHIP ZONING ORDINANCE of 2012 (September 4, 2012), *as amended* (Zoning Ordinance).

commercial buffer requirement in the Zoning Ordinance. Upon review, we reverse and remand the matter for further proceedings.

## Background

Owner's property, located on Neshaminy Avenue and identified as Tax Parcel No. 21-032-135 (Property), is approximately 4,000 square feet in size and located within the Township's R-3 Residential Zoning District (R-3 District). The current minimum lot size for a single-family dwelling is 9,000 square feet. The Property was created in 1920 as part of the subdivision and development plan for "Neshaminy Falls" and consists of lots 1431 and 1432 as shown in the plan. Reproduced Record at 25a (R.R. __). The rear adjoining lot is located at 1138 Siles Avenue and identified as Tax Parcel No. 21-032-131 (Siles Avenue Property). In 1980, Thomas Shields and Theresa Cosgrove transferred, *inter alia*, the Property and the Siles Avenue Property to Barbara Davis (Davis). Davis built a single-family dwelling and used the Property as her rear yard, patio, and garden. In 2011, Davis built an addition to her house, which extended over the boundary with the Property.

In 2021, ADR Investments, LLC (ADR) purchased the Property at a tax sale. On December 19, 2023, Owner purchased the Property from ADR. On January 26, 2024, Owner applied to the Zoning Board for a variance from the side yard setback requirements under the Zoning Ordinance to allow construction of a two-story single-family dwelling on the Property. After being advised that the Property and the Siles Avenue Property constituted a single merged lot, Owner amended its application to request the following relief:

1. A variance from Section 27-603(A) of the []Zoning Ordinance[2] [] to permit a minimum lot area of 4,000 square feet whereas a minimum lot area of 9,000 square feet is otherwise required;

2. A variance from Section 27-603(A) of the Zoning Ordinance to permit a minimum lot width of 40 feet whereas a minimum lot width of 60 feet is otherwise required;

3. A variance from Section 27-603(C) of the Zoning Ordinance[3] to permit a minimum individual side yard setback of 7.5 feet whereas a minimum individual side yard setback of 8 feet is otherwise required;

4. A variance from Section 27-603(C) of the Zoning Ordinance to permit a minimum aggregate side yard [of] 15 feet whereas a minimum aggregate side yard setback of 20 feet is otherwise required;

---

[2] It states:

> All uses shall comply with the area and dimensional requirements listed in this section, unless a greater area or dimensional requirement is stated in Part 14, Use Regulations, for the specific use; in which case the requirements of Part 14 shall apply.
>
> > A. Lot area and width. A lot area of not less than 9,000 square feet, with a width of not less than 60 feet at the building line and front property line, shall be provided for each single-family dwelling. Only one single-family detached dwelling or one building for a principal use permitted in this district shall be permitted on any single lot.

ZONING ORDINANCE, §27-603(A).

[3] It states:

> All uses shall comply with the area and dimensional requirements listed in this section, unless a greater area or dimensional requirement is stated in Part 14, Use Regulations, for the specific use; in which case the requirements of Part 14 shall apply.
>
> . . . .
>
> > C. Side yards. Unless otherwise provided in this chapter, there shall be two side yards on each lot which shall have an aggregate width of not less than 20 feet and neither of which shall be less than eight feet in width.

ZONING ORDINANCE, §27-603(C).

5. A variance from Section 27-603(D) of the Zoning Ordinance[4] to permit a minimum rear yard setback of 0 feet [] whereas a minimum rear yard setback of not less than 25 feet is otherwise required; and

6. A variance from Section 27-603(G)[5] and Section [27-]1707 of the Zoning Ordinance[6] to not provide a buffer yard between

---

[4] It states:

All uses shall comply with the area and dimensional requirements listed in this section, unless a greater area or dimensional requirement is stated in Part 14, Use Regulations, for the specific use; in which case the requirements of Part 14 shall apply.

. . . .

D. Rear yard. Unless otherwise provided in this chapter, there shall be a rear yard on each lot which shall be not less than 25 feet in depth.

ZONING ORDINANCE, §27-603(D).

[5] It states:

All uses shall comply with the area and dimensional requirements listed in this section, unless a greater area or dimensional requirement is stated in Part 14, Use Regulations, for the specific use; in which case the requirements of Part 14 shall apply.

. . . .

G. Along any residential zoning district boundary line or along any lot line separating a residential use from a nonresidential use, a buffer yard shall be provided which shall be not less than 25 feet in width measured from such boundary line or from the street line where such street constitutes the district boundary line and shall be in accordance with the provisions of this chapter. Such buffer yards may be conterminous with any required yard in this district, and in case of conflict, the largest yard requirement shall apply.

ZONING ORDINANCE, §27-603(G).

[6] It states:

1. A completely planted visual barrier or landscape screen of sufficient density and height to constitute an effective screen shall be provided and maintained in the following locations:

A. Between any nonresidential district and any residential district or residential use;

. . . .

2. The buffer shall be planted along the property lines and may be located within the required side or rear yard setbacks. Additional plantings may not be required

4

the zoning district boundary line separating the R-3 Residential District and the C-1 Light Commercial District whereas a buffer yard is otherwise required.

R.R. 10a-11a.

The Zoning Board held a hearing, at which Owner's surveyor, Mikhail Zavyazkin, and Owner's principal, Jamie McCafferty, testified. Owner also presented documentary evidence including aerial photographs, a site plan, the 1920 subdivision plan, deeds, and tax maps.

## Zoning Board Decision

By decision dated April 25, 2024, the Zoning Board denied Owner's variance applications. The Zoning Board found that the Property and the Siles Avenue Property had been "under single ownership and used as one lot[]" since Davis took title in 1980. Zoning Board Decision, Finding of Fact No. 9; R.R. 18a. Davis had used part of the Property as her rear yard, patio, and garden, and, in 2011, she put an addition on her house that takes up 236 square feet of the Property. Zoning Board Decision, Finding of Fact Nos. 11-12; R.R. 18a. The Property, which does not have a mailing address, is identified solely by its tax parcel number. Zoning

---

where existing planting, topography or man-made structures are deemed acceptable for screening purposes by the Board of Supervisors.

3. The buffer yard shall be measured from the district boundary line, property line or from the near street line where a street serves as the district boundary line.

4. The buffer yard may be coterminous with required front, side or rear yards and, in case of conflict, the larger yard requirements shall apply.

5. No structure, manufacturing or processing activity or storage of materials shall be permitted in the buffer yard; buffer yards shall be maintained as green, planted open spaces.

6. To the extent the buffer yard regulations contained in § 22-522.5 of Chapter 22, Subdivision and Land Development, exceed the regulations contained in this part, the regulations in the Subdivision and Land Development Ordinance shall be applicable herein.

ZONING ORDINANCE, §27-1707.

Board Decision, Finding of Fact No. 10; R.R. 18a. The Zoning Board concluded that under Section 27-1712 of the Zoning Ordinance,[7] the Property and the Siles Avenue Property "merged while in single ownership and used as one lot" by Davis. Zoning Board Decision, Conclusion of Law No. 6; R.R. 20a. The Property, "treated as one lot merging with the [Siles Avenue] Property," was then "split" when sold via a tax claim deed in October of 2021. Zoning Board Decision, Finding of Fact No. 5; R.R. 18a.

McCafferty testified that to comply with the aggregate 20-foot side yard setbacks under the Zoning Ordinance, Owner can build only a 20-foot-wide home with no garage, which was not feasible in the market. This created a hardship. Owner proposed a 25-foot-wide home, which required a 6-inch variance on each side setback requirement. The Zoning Board discredited McCafferty's testimony on unnecessary hardship and minimum relief necessary. Zoning Board Decision, Conclusion of Law No. 13; R.R. 21a-22a.

The Zoning Board noted that Owner's site plan did not include a garage. Zoning Board Decision, Finding of Fact No. 25; R.R. 19a. Further, any alleged hardship was self-created because Owner purchased the Property without inspection, which would have revealed the encroachment on the Property. Zoning Board Decision, Conclusion of Law No. 12; R.R. 21a. The Zoning Board further concluded that Owner's "need for relief from every setback requirement impairs the appropriate use or development of adjacent property and would be detrimental to public welfare." Zoning Board Decision, Conclusion of Law No. 9; R.R. 21a.

In short, the Zoning Board concluded that Owner had failed to present sufficient evidence to warrant the grant of the dimensional variances requested.

---

[7] *See infra* p. 12.

6

Zoning Board Decision, Conclusion of Law No. 15; R.R. 22a (citing *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 721 A.2d 43 (Pa. 1998)).

Owner appealed to the trial court, which took no additional evidence.

**Trial Court Decision**

By order of December 16, 2024, the trial court affirmed the Zoning Board's decision. Its Pa.R.A.P. 1925(a) opinion explained that the credibility of witnesses and the weight to be given to witness testimony are matters for the Zoning Board in its capacity as fact-finder. Here, the Zoning Board acted within its discretion in discrediting Owner's witnesses and finding that the requested variances would have a negative impact upon surrounding properties and public welfare. It reasoned that Owner's hardship was self-created because it purchased the Property without inspection. Owner's evidence demonstrated a desire to develop the Property as it wishes, which does not constitute unnecessary hardship for a dimensional variance. Trial Court Pa.R.A.P. 1925(a) Opinion at 7-8 (citing *Singer v. Philadelphia Zoning Board of Adjustment*, 29 A.3d 144, 150 (Pa. Cmwlth. 2011)).

The trial court agreed with the Zoning Board's conclusion that by reason of Section 27-1712 of the Zoning Ordinance, the Property and the Siles Avenue Property had merged while they were in single ownership by Davis and used as one lot.

Finally, the trial court concluded that Owner "failed to show that without the requested variances, the Property was burdened and without use." Trial Court Pa.R.A.P. 1925(a) Opinion at 9-10. The trial court opined that "the relief sought was not *de minimus* [sic] but rather was quite substantial as there were requests for each setback variance." *Id*. at 9.

Owner appealed to this Court.

7

**Appeal**

On appeal,[8] Owner raises three issues for our review. First, Owner argues that the Zoning Board erred in holding that the Property had merged with the Siles Avenue Property and, on that basis, denied the variances from the minimum lot size and width requirements in the Zoning Ordinance. Second, Owner argues that the Zoning Board erred in denying variances from the minimum side and rear yard setback requirements in the Zoning Ordinance because the requested relief was *de minimis*. Finally, Owner argues that the Zoning Board erred in not granting it a variance from the commercial buffer requirement in the Zoning Ordinance.

## I. Merger of Lots

Owner argues that the Zoning Board erred in holding that the Property had merged with the adjoining Siles Avenue Property and, therefore, lost its nonconforming status. The merger of lots doctrine applies only where the municipality has adopted an ordinance provision that explicitly mandates merger. *See Loughran v. Valley View Developers, Inc.*, 145 A.3d 815, 819-20 (Pa. Cmwlth. 2016). Here, the Township has not done so. Section 27-1712 of the Zoning Ordinance, which the Zoning Board cited, does not mandate merger; it merely restricts the exceptions to the minimum lot requirement.

Owner argues that the Property is an undersized lot that did not merge with the contiguous property and, thus, has retained its status as a legal nonconforming lot. As such, Owner is entitled to develop it without the need for dimensional variances from the minimum lot width and lot area requirements of the

---

[8] "Where the trial court receives no additional evidence on appeal from a zoning hearing board's decision, an appellate court's standard of review is to determine whether the board committed an abuse of discretion or an error of law." *Harrisburg Gardens, Inc. v. Susquehanna Township Zoning Hearing Board*, 981 A.2d 405, 410 (Pa. Cmwlth. 2009).

8

R-3 District. Owner contends that it must be permitted "to make some productive use" of its dimensionally nonconforming lot. Owner Brief at 9 (quotation omitted).[9]

Even assuming the merger of lots doctrine applied, Owner argues that the Zoning Board's denial of its variances from minimum lot area and lot width requirements cannot stand. The record showed that strict application of the zoning requirements renders the Property undevelopable for any use permitted in the R-3 District.

The Zoning Board counters[10] that Section 27-1712 of the Zoning Ordinance is a mandatory merger provision and that its "interpretation of its own zoning ordinance is entitled to great weight and deference." Zoning Board Brief at 21 (citing *City of Hope v. Sadsbury Township Zoning Hearing Board*, 890 A.2d 1137, 1143 (Pa. Cmwlth. 2006)). It is undisputed that the Property and the Siles Avenue Property were under common ownership at the time the Township enacted the Zoning Ordinance in 2012 and were used as one lot by Davis. The record also demonstrated an "overt, unequivocal, physical manifestation of [Davis's] intent to integrate the lots into one parcel through [her] affirmative actions" by extending her residence over the property line and by using the Property as a patio, garden, and rear yard. Zoning Board Brief at 23 (quoting *Appeal of Gregor*, 627 A.2d 308, 311 (Pa. Cmwlth. 1993)).

The Zoning Board argues that Owner created the hardship by attempting to subdivide the merged property into two lots. Owner purchased the Property without inspection, and a self-created hardship requires a denial of a

---

[9] Owner quotes *Jacquelin v. Zoning Hearing Board of Hatboro Borough*, 558 A.2d 189 (Pa. Cmwlth. 1989), but this quoted phrase could not be located in the cited case. The quotation is in *Jones v. Zoning Board of North Catasauqua*, 455 A.2d 754, 755 (Pa. Cmwlth. 1983).

[10] The Township joins and incorporates by reference in its entirety the Zoning Board's brief.

variance.  In any event, an undersized lot is not *per se* an unnecessary hardship.
Zoning Board Brief at 29 (citing *Kneebone v. Zoning Hearing Board of Township of Plainfield*, 276 A.3d 705, 719 (Pa. 2022)).

In *Loughran*, 145 A.3d at 821, this Court explained that a nonconforming lot is one that "has been rendered undersized by the passage of an ordinance requiring a larger lot size than what was previously required for the permitted use in the zoning district where the lots are located; in such instances, the undersized lot becomes a 'nonconforming lot.'"  Given the challenge of a nonconforming lot, "[m]any municipalities within the Commonwealth have adopted provisions in their zoning ordinances specifically aimed at addressing this event, often by requiring that the nonconforming lot merge with the commonly held adjoining lot in order to create one contiguous lot that is in conformity with the applicable zoning ordinance."  *Id*.  Other municipalities prefer "instead to address nonconformance through the process established by the [Pennsylvania Municipalities Planning Code (MPC)[11]] for issuing variances."  *Id*.

This Court further explained in *Loughran* that

> [i]n instances where a local governing body has adopted a provision addressing merger of lots, disputes arising from the application and effect of these ordinances have often reached the courts, particularly where the issue is focused upon whether the conforming and nonconforming lots have been held in single and separate ownership.  From the plethora of cases interpreting and applying like local merger of lots ordinances, uniform standards and principles have emerged, which have coalesced into a merger of lots doctrine.[]  *However, this merger of lots doctrine is only triggered where a local municipality has adopted a merger of lots provision.  It is axiomatic that merger of lots shall not be presumed merely because two adjoining lots come into common*

---

[11] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

10

> *ownership; first and foremost, merger of lots is a creature of local ordinance, not common law.*

*Id.* at 821-22 (emphasis added) (footnote omitted). In short, the merger of lots doctrine applies only where provided by local ordinance.

Here, Section 27-202 of the Zoning Ordinance defines a "nonconforming lot" as "[a] lot the area or dimension of which was lawful prior to the adoption or amendment of this chapter, but which fails to conform to the requirements of the zoning district in which it is located by reason of such adoption or amendment." ZONING ORDINANCE, §27-202. The Property was created as part of the 1920 "Neshaminy Falls" subdivision plan, and the parties agree that it was lawful when created. The Property and the Siles Avenue Property then came into common ownership by Davis in 1980. The Property was then rendered undersized by passage of the Zoning Ordinance in 2012 requiring a larger sized lot to construct a single-family dwelling. The question is whether the Property retained its "nonconforming lot" status after the passage of the Zoning Ordinance or had merged into the Siles Avenue Property while under common ownership by Davis.

The merger of lots doctrine is "only triggered where a local municipality has adopted a merger of lots provision." *Loughran*, 145 A.3d at 822. The Zoning Board argues that Section 27-1712 is such a provision. Part 17 of the Zoning Ordinance, titled "General Requirements Applicable to All Uses and Districts," provides, in pertinent part, as follows:

> §27-1710 **Lot area.**
>
> 1. Where a minimum lot area is specified, no principal building or use shall be erected or established on any lot of lesser area except as may be permitted by the terms of this chapter.
>
> 2. The lot area and yards required for any new building or use shall not include any part of a lot that is required by any other building or use to comply with the requirements of this chapter.

11

No required lot area and yard shall include any property, the ownership of which has been transferred subsequent to the effective date of this chapter, if such property was part of the area required for compliance with the dimensional requirements applicable to the lot from which such transfer was made.

§27-1711 **Minimum lot width.**

Where a minimum lot width is specified, no principal building shall be erected on any part of a lot which has a width of less than is specified, except as may be permitted by the terms of this chapter.

§27-1712 **Exceptions to minimum lot areas and lot widths.**

*1. The provisions of this chapter shall not prevent the construction of a single-family dwelling, provided the yard requirements are observed, on any lot which was lawful when created and which, prior to the effective date of this chapter, was in separate ownership duly recorded by plan or deed, provided that such lot is not less than 7,000 square feet, and provided it is permitted by special exception by the Zoning Hearing Board in accordance with this chapter.*

*2. This exception shall not apply to any two or more contiguous lots in a single ownership as of or subsequent to the effective date of this chapter in any case where a reparceling or replatting could create one or more lots which would conform to the above provisions.*

ZONING ORDINANCE, §§27-1710-27-1712 (emphasis added).

The Zoning Board held that, pursuant to Section 27-1712, the Property and the Siles Avenue Property, "as contiguous lots," merged "while in single ownership [by Davis] and used as one lot." Zoning Board Decision, Conclusion of Law No. 6; R.R. 20a. The Zoning Board read words into Section 27-1712 that do not exist.

Section 27-1712(1) provides an exception to the minimum lot area and lot width requirements for a lot that is at least 7,000 square feet in size. Section 27-1712(2) then provides an exception to this exception for "any two or more

12

contiguous lots in a single ownership as of or subsequent to the effective date of this chapter[.]" ZONING ORDINANCE, §27-1712(2). Accordingly, the minimum lot area and lot width requirements of Sections 27-1710 and 1711 still apply if "a reparceling or replatting could create one or more lots which would conform to the above provisions." ZONING ORDINANCE, §27-1712(2). Finally, Section 27-1712(2) says nothing whatsoever about the use of the contiguous lots.

Section 27-1712(2) does not constitute a merger of lots provision that triggers the "merger of lots doctrine," as explained in *Loughran*, 145 A.3d at 822. First, it does not mandate that two contiguous lots held in single ownership automatically merge when one of the lots has been rendered undersized by the passage of the Zoning Ordinance. Second, the record does not show that Davis ever requested a "reparceling or replatting," or that a reparceling or replatting could have created a lot that conforms to the minimum lot area and lot width requirements. ZONING ORDINANCE, §27-1712(2). There is nothing in the record on the size of the Siles Avenue Property, which may or may not be 5,000 square feet in size. As such, it was not factually established that the merger of the Property with the Siles Avenue Property could have created a 9,000-square-foot lot.

"A zoning board's interpretation of its zoning ordinance is [entitled to] great weight[.]" *Plum Borough v. Zoning Hearing Board of Borough of Plum*, 310 A.3d 815, 823 (Pa. Cmwlth. 2024) (quotation omitted). "However, we will not defer to a zoning hearing board's interpretation where such interpretation is 'clearly erroneous,' and generally, a board's failure to heed the plain text of the ordinance amounts to legal error which this Court will not ignore." *Id*. (quoting *Gouwens v. Indiana Township Board of Supervisors*, 260 A.3d 1029, 1037 (Pa. Cmwlth. 2021)).

13

Here, the Township has not enacted a merger of lots provision. Thus, the Zoning Board erred in applying the merger of lots doctrine in the instant case. The Property has remained a nonconforming lot.

This is not the end of the inquiry, however. The question remains on how a nonconforming lot such as the Property can be developed under the Zoning Ordinance. The Zoning Ordinance does not provide that a nonconforming lot can be developed without the need for variances, as suggested by Owner. Rather, Section 27-2102(2) states: "Nonconforming lots are subject to the applicable dimensional regulations for the zoning district in which such lots are located." ZONING ORDINANCE, §27-2102(2). This provision can be construed to address lot nonconformance by variance. *See Loughran*, 145 A.3d at 821.[12]

Section 27-2305(3) of the Zoning Ordinance provides the following requirements for grant of a variance:

> (3) Requirements and standards. No variance in the strict application of the provisions of this chapter shall be granted by the Board unless the Board finds that the requirements and standards are satisfied. The applicant must prove that the variance will not be contrary to the public interest and that practical difficulty and unnecessary hardship will result if it is not granted; in particular, the applicant shall establish and substantiate that the appeal for the variance is in conformance with all the requirements and standards listed below:
>
> A. That the granting of the variance shall be in harmony with the general purpose and intent of this chapter and shall not be injurious to the neighborhood or otherwise detrimental to the public welfare.

---

[12] This provision can also be construed to mean that the nonconforming lot can be developed as a matter of right as long as the structure complies with height and setback regulations. By contrast, a nonconforming use can be altered or enlarged only by special exception. ZONING ORDINANCE, §27-2102(3)(A).

14

B. That the granting of the variance will not permit the establishment within a district of any use which is not permitted in that district.

C. There must be proof of unique circumstances. There are special circumstances or conditions, fully described in the findings, applying to the land or buildings for which the variance is sought, which circumstances or conditions are peculiar to such land or buildings and do not apply generally to land or buildings in the neighborhood, and that said circumstances or conditions are such that the strict application of the provisions of this chapter would deprive the applicant of the reasonable use of such land or buildings.

D. There must be proof of unnecessary hardship. If the hardship is general, that is, shared by neighboring property, relief can be properly obtained only by legislative action or by court review of an attack on the validity of this chapter.

E. That the granting of the variance is necessary for the reasonable use of the land or building and that the variance as granted by the Board is the minimum variance that will accomplish this purpose. It is not sufficient proof of hardship to show that greater profit would result if the variance were awarded. Furthermore, hardship complained of cannot be self-created; it cannot be claimed by one who purchases with or without knowledge of restrictions, it must result from the application of the Chapter; it must be suffered directly by the property in question; and evidence of variance granted under similar circumstances shall not be considered.

F. The Board may prescribe any safeguard that it deems necessary to secure substantially the objectives of the regulation or provision to which the variance applies.

ZONING ORDINANCE, §27-2305(3).[13]

In denying Owner's requested variances from the minimum lot area and lot width requirements, the Zoning Board held that the alleged unnecessary hardship

---

[13] The Zoning Ordinance's standards for a variance are consistent with Section 910.2 of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2.

15

was self-created because Owner did not inspect the Property at purchase. The Zoning Board held that the Property became undersized when it was "split" from the Siles Avenue Property at the tax sale. Zoning Board Decision, Finding of Fact No. 5; R.R. 18a. However, as explained above, the Property did not merge with the Siles Avenue Property but, rather, has retained its status as a nonconforming lot. The fact that Owner purchased the Property without inspection is irrelevant. The Property became undersized by the passage of the Zoning Ordinance, and Owner cannot control the size or width of the lot.

The right to develop a nonconforming lot "runs with the land and vests in subsequent buyers." *N. Pugliese, Inc. v. Palmer Township Zoning Hearing Board*, 592 A.2d 118, 121 (Pa. Cmwlth. 1991) (*Pugliese*). In *Pugliese*, a purchaser of an undersized, nonconforming lot requested variances from the minimum lot size and side yard zoning requirements. The common pleas court affirmed the zoning board's decision denying both variances. On appeal, this Court reversed on the denial of the minimum lot size variance. We held that it was error for the zoning board to hold that the purchaser created the hardship because he bought the lot with knowledge that it was undersized. We also observed:

> An undersized lot constitutes the physical circumstances which may entitle one to a variance provided the other variance criteria are met. *Jacquelin v. Zoning Hearing Board of Hatboro Borough*, [] 558 A.2d 189 ([Pa. Cmwlth.] 1989), *petition for allowance of appeal denied*, [] 575 A.2d 571 ([Pa.] 1990). As we noted in *West Goshen Township v. Crater*, [] 538 A.2d 952 ([Pa. Cmwlth.] 1988), "(w)here a lot is too small to conform with the minimum lot area requirements, and cannot be made to conform by merging lots or by re-subdividing a larger tract, enforcement of the ordinance would sterilize the land, creating the necessary hardship which will justify the granting of a variance." *Id*. at [] 955.

16

*Pugliese*, 592 A.2d at 121.

In *Pugliese*, we held that the proposed development of the property would not alter the essential character of the neighborhood or district because the purchaser sought to build a single-family home in an area of other similarly sized homes and lots. We also held that the requested variance represented the minimum relief necessary because "the lot's dimension cannot be altered, and neither [the purchaser] nor his predecessor in title own an adjacent parcel with which this one may be consolidated." *Pugliese*, 592 A.2d at 122.

The Zoning Board relies on *Kneebone*, 276 A.3d 705, for the proposition that an undersized lot, on its own, does not constitute an unnecessary hardship. In that case, the homeowners requested a dimensional variance from the rear setback requirement in order to construct an addition to their home with a raised, covered deck on their half-acre lot. Their lot became undersized by the passage of the zoning ordinance, which made it impossible to build both an addition and a deck. The zoning board granted the variance, finding that "due to the undersized dimensions of the lot, compliance with the dimensional requirements for setbacks creates a hardship relative to the property." *Id*. at 717 (quotation omitted). The common pleas court affirmed the zoning board, and this Court reversed. *See Kneebone v. Zoning Hearing Board of the Township of Plainfield* (Pa. Cmwlth., No. 807 C.D. 2019, filed July 9, 2020) (unreported). On further appeal, the Supreme Court issued a plurality opinion affirming this Court. The Supreme Court criticized the zoning board's finding on hardship because the record did not demonstrate why the choice between an addition or a deck constituted an unnecessary hardship. *Kneebone*, 276 A.3d at 718.

17

Plurality opinions do not establish binding precedent for future cases. *Donatucci v. Pennsylvania Labor Relations Board*, 547 A.2d 857, 861 n.5 (Pa. Cmwlth. 1988). Even so, *Kneebone* is distinguishable. The lot in *Kneebone* had been developed with a single-family residence, which the homeowners sought to expand. By contrast, here, Owner proposes to build a single-family dwelling on the Property, a use permitted by right in the R-3 District. Without the grant of the requested variances from the minimum lot area and width requirements, the Property cannot be developed for a permitted use.

In light of *Pugliese*, we hold that Owner satisfied the criteria under Section 27-2305 of the Zoning Ordinance for the grant of variances from the minimum lot size and lot width requirements. The Zoning Board erred in holding otherwise.

## II. Side and Rear Setback Variances

Owner argues, next, that the Zoning Board erred in denying its variances from the minimum side and rear yard setback requirements in the Zoning Ordinance. The Property is 40 feet wide, which is 20 feet short of the 60-foot width required in the Zoning Ordinance. Strict compliance with the side yard requirements would render development of a reasonable home impractical. Owner proposes to construct a 25-foot-wide single-family home centered on the Property, with 7.5 feet of setback on each side. The requested variances are 0.5 feet from the individual minimum side yard setback (8 feet) and 5 feet from the aggregate total side yard setback (20 feet). Owner argues that these deviations are *de minimis*.

With respect to the rear yard setback zoning requirement, Owner requested a zero setback due to the existing structure on the Siles Avenue Property that encroaches 11.2 feet onto the Property. Section 27-603(D) of the Zoning

18

Ordinance provides that "[u]nless otherwise provided in this chapter, there shall be a rear yard on each lot which shall be not less than 25 feet in depth." ZONING ORDINANCE, §27-603(D). "Rear yard," in turn, is defined as "[a] yard between a structure and a rear lot line and extending the entire length of the rear lot line." ZONING ORDINANCE, §27-202. Owner contends that the encroachment eliminates the possibility of a rear yard. Owner has proposed to grant an easement to Davis to allow the encroachment to remain in place, thereby preserving the current condition without litigation or forced removal or relocation. Owner Brief at 12. Owner argues that the rear yard setback variance requested is "procedural in nature – a technical accommodation to recognize and permit a pre-existing encroachment" that was not caused by Owner. *Id*. Granting the proposed variance serves the public interest by allowing the home on the Siles Avenue Property to remain in its current condition.

The Zoning Board responds that Owner's requested relief from each and every setback zoning requirement is not *de minimis* but substantial. Owner could have complied with one of the side yard setbacks but chose not to, thus proving it is not the minimum relief necessary. Zoning Board Brief at 28. "The test for determining whether a property owner is entitled to a variance is not whether the desired improvement is more preferable to the owner [], but rather whether the property can be used in a reasonable manner within the restrictions of the [zoning o]rdinance." *Id*. (citation omitted).

"The de minimis doctrine is an extremely narrow exception to the heavy burden of proof which a party seeking a variance must normally bear." *Swemley v. Zoning Hearing Board of Windsor Township*, 698 A.2d 160, 162 (Pa. Cmwlth. 1997) (quoting *King v. Zoning Hearing Board of Borough of Nazareth*, 463 A.2d 505, 505 (Pa. Cmwlth. 1983)). "This exception may be applied where (1) only a minor

19

deviation from the zoning ordinance is sought and (2) rigid compliance with the ordinance is not necessary for the preservation of the public interests sought to be protected by the ordinance." *Swemley*, 698 A.2d at 162. "The determination of whether or not the de minimis doctrine applies requires careful consideration of both of these factors." *Id*. "There are no set criteria for determining what will be considered *de minimis*." *Pequea Township v. Zoning Hearing Board of Pequea Township*, 180 A.3d 500, 505 (Pa. Cmwlth. 2018) (quoting *Hawk v. City of Pittsburgh Zoning Board of Adjustment*, 38 A.3d 1061, 1066 (Pa. Cmwlth. 2012)). "[T]he decision of whether to grant a *de minimis* variance is left to the discretion of the local zoning board." *Pequea Township*, 180 A.3d at 505 (quoting *Alpine, Inc. v. Abington Township Zoning Hearing Board*, 654 A.2d 186, 191 (Pa. Cmwlth. 1995)). Where the *de minimis* doctrine applies, "there is no need to resort to any other theory of relief[]" from the zoning restriction. *Nettleton v. Zoning Board of Adjustment of City of Pittsburgh*, 828 A.2d 1033, 1038 (Pa. 2003).

Here, the Zoning Board did not address whether the 0.5-foot variance from the side yard setback, the 5-foot variance from the aggregate total side yard setback, and the 0-setback variance from the 25-foot rear yard requirement are *de minimis*. Likewise, the trial court stated, without explanation, that the relief Owner sought "was quite substantial as there were requests for each setback variance." Trial Court Pa.R.A.P. 1925(a) Op. at 9. In light of our holding that the Property has kept its nonconforming status rather than merged into the Siles Avenue Property, we remand the matter to the trial court with instructions to further remand this matter to the Zoning Board for a determination of whether Owner is entitled to these dimensional variances under the *de minimis* doctrine.

### III. Variance from Commercial Buffer Requirement

Finally, Owner argues that the Zoning Board erred in not granting its variance from the commercial buffer requirement in the Zoning Ordinance. Sections 27-603(G) and 27-1707 require a 25-foot buffer yard along any residential zoning district boundary line or any lot line separating a residential use from a nonresidential use. ZONING ORDINANCE, §§27-603(G), 27-1707. Owner believes the buffer yard requirement applies to the nonresidential use side of the zoning boundary line and, thus, is inapplicable. Nevertheless, "out of abundance of caution," Owner sought variances from these provisions. Owner Brief at 13.

Owner argues that should these requirements apply to the Property, the 25-foot buffer would be required along the rear and one of the side yards of the Property, which would consume over half of the 40-foot width of the lot, leaving only 15 feet to construct a home. This would prohibit development of the Property and create an unnecessary hardship. Owner Brief at 14. The buffer requirement would also require the removal of the encroaching structure from the Siles Avenue Property, a result that Owner sought to avoid by proposing an easement to allow for that home to remain in its current condition.

The Zoning Board did not address Owner's requested variance from the buffer yard requirement. Neither the Zoning Board nor the Township has responded to Owner's argument before this Court. Accordingly, we remand the matter to the trial court to further remand it to the Zoning Board for consideration of Owner's variance request from the buffer requirement. On remand, the Zoning Board needs to consider whether the buffer requirement applies only to the nonresidential use side of the zoning boundary line under Sections 27-603(G) and 27-1707 of the Zoning Ordinance and, thus, is not applicable to the Property.

21

**Conclusion**

The Zoning Board erred in denying Owner's variance request from the minimum lot size and lot width requirements because the Property is a lawful, nonconforming lot that did not merge with the Siles Avenue Property. The Zoning Ordinance does not contain a merger provision; as such, the Zoning Board erred in applying the merger of lots doctrine to the Property. The undersized lot constitutes an unnecessary hardship because without a variance from the minimum lot size and lot width requirements, Owner cannot develop the Property for a residential use. *Pugliese*, 592 A.2d at 121. Owner did not create the hardship by failing to inspect the Property; rather, the right to develop a nonconforming lot runs with the land and vests in subsequent buyers. *Id*.

In light of this holding, we reverse the trial court's decision affirming the Zoning Board's denial of Owner's variance applications and remand to the trial court with instructions to further remand this matter to the Zoning Board for further proceedings. On remand, the Zoning Board needs to consider whether Owner's variance requests from the side yard and the rear yard setbacks are *de minimis*. The Zoning Board should also consider whether the 25-foot buffer yard requirement under Sections 27-603(G) and 27-1707 of the Zoning Ordinance is applicable to the Property, and, if so, whether a variance is warranted to permit the development of the Property.

MARY HANNAH LEAVITT, President Judge Emerita

Judge Covey did not participate in the decision of this case.

22

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

JMAC Investments, LLC,      :
         Appellant     :
                       :
         v.             :     No. 68 C.D. 2025
                       :
Lower Southampton Township    :
Zoning Hearing Board and Lower    :
Southampton Township        :

# **O R D E R**

AND NOW, this 6th day of April, 2026, the order of the Court of Common Pleas of Bucks County (trial court), dated December 16, 2024, in the above-captioned matter, is REVERSED, and the matter is REMANDED to the trial court for further remand to the Lower Southampton Township Zoning Hearing Board for further proceedings consistent with the foregoing memorandum opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita